CLARK and DOUGLAS, JJ., dissenting.
The plaintiff's own testimony upon the question of the defendant's negligence is not consistent, it seems to us, with the allegation of the complaint; and is also seems to us that his Honor, in the charge, had some difficulty in understanding what the contention of the plaintiff was as to the proximate cause of the plaintiff's hurt. In the complaint, as it was first drawn and filed, the plaintiff alleged that the defendant was, in September, 1900, operating a train of cars on its line of railway between Wilmington and Hamlet, with the couplers on the train of cars out of repair and defective "to such an extent that the cars in said train and other cars belonging to the defendant at Clarkton, which were to be made a part of said train, could not be coupled without going between said cars; that on that date there were four cars upon the side track at Clarkton, and as the train approached that place it was uncoupled, leaving the cab on the main track below the beginning of the side track, the balance of the cars being carried along the main track to a place above the other end of the side track." The (570) remaining portion of the complaint was as follows: "(3) That plaintiff was ordered by the conductor in charge of said train, whose orders the plaintiff was bound to obey, to remain near the cars on the main track below said side track for the purpose of coupling those cars to the cars upon the side track, and the said cars upon the side track were put in motion by defendant, and were negligently permitted to roll very rapidly, by means of what is known as `kicking' cars along said side track, and on the main track, and negligently and violently to come in contact with the cars on the main track, where the plaintiff was. (4) That at the said time and place the defendant negligently *Page 412 
permitted the coupler attached to the cars on said side track to remain out of repair so that the lip was closed, which made it necessary for plaintiff to go between said cars in order to couple the same. (5) That on said day, at said town of Clarkton, while the plaintiff was endeavoring to perform the order of said conductor, and while he was coupling said cars, he was greatly injured and damaged by reason of the negligence of defendant, as herein set forth, and by other acts of negligence, his foot was crushed to such an extent that his big toe and a part of his foot had to be amputated; he suffered great physical and mental pain and anguish, and was compelled to incur great expense, and was disabled from work, and has been permanently injured, to his great damage $10,000."
The complaint was afterwards amended, the amendment consisting of the allegation that the conductor well knew that the order to couple the cars could not be performed without going between them on account of the condition of the cars; and in the further allegation that the plaintiff was in no fault on his part.
It is to be seen from the complaint, then, that the allegation as to defective couplers on the train, before it was (571) uncoupled at the siding, was a general allegation, bearing no more particularly on the cab than on any of the freight cars which composed the train; while it appears from the fourth allegation of the complaint that the coupler attached to the car on the side track, which car was to be shoved back and coupled with the cab, was the particular car equipped with the defective coupler. And yet, on the trial, that particular car and coupler disappeared practically from the case, and the plaintiff's whole testimony was in respect to an alleged defect in the coupler on the cab.
It is stated in the case on appeal that all of the evidence was sent up, and after a careful perusal of it is seems evident from the plaintiff's testimony (and that without being confused by the cross-examination) that he was uncertain where to fix the negligence of the defendant, i. e., whether his hurt was caused from trying to remedy the defective coupler on the cab or that on the freight car, or both. By the amendment of the complaint he alleged in a general way that the conductor knew that the coupling could not be made without going between the cars on account of the condition of the cars. He did not allege that the conductor knew that there was any defect in the coupler on the cab or in that on the particular freight car which was to be attached to the cab. On his examination as a witness, however, he said that Captain Byrd, the conductor, knew that the coupler *Page 413 
on the cab was out of fix to the extent that the link or chain was gone — missing.
The coupler was a standard automatic coupler, such a one as is required by law to be attached to cars, and the only defect in the one on the cab was the missing link; and, as we have seen, the plaintiff said that the conductor knew that link was missing when he ordered the plaintiff to go to the cab and make the coupling when the cars on the siding should be pushed back against it. The only effect of the missing link was (572) that it rendered it necessary, in order to produce a coupling of the cars, that the lip of the coupler should be opened by the hand, and as the plaintiff testified that he was ordered to make the coupling, and that the conductor knew that the link was missing, let us assume that he was authorized under the order to go to the car and open the lip. He did that, and when it was done the coupler was in as good condition for coupling as if the link had not been missing in the first place. That is to be emphasized, for there is no evidence, not even in the plaintiff's own testimony, to the effect that the coupler had any other defect about it. We know he said that the bumper was turned towards him and was not in the center, and that he had to kick it to get it into the center to make the coupling with the approaching freight car; but all that is mere opinion evidence. The fact still remained that there was no other defect except the missing link.
This Court in Greenlee v. R. R., 122 N.C. 977; 41 L.R.A., 399, decided that it was the duty of railroad companies in this State to equip their cars with self-couplers, and by act of Congress all cars that are operated in interstate commerce are required to be so equipped; and it would seem to be almost bordering on the absurd for this Court to say that we can have no common knowledge of what a self-coupler is, or that we will receive as evidence that a self-coupler is defective simply because the bumper is not exactly in the center. We know it must be to some extent movable, so as to adjust it to curves of the track, and no greater mobility was shown by the plaintiff than that.
When the plaintiff, therefore, had opened the lip of the coupler on the cab, in the manner described by himself, he had discharged the order which had been given him by the conductor. (The conductor testified that he gave him no such order, and that the coupler was in good condition.) But the plaintiff said that after he had discharged his duty — that is, (573) after he had opened the lip of the coupler — he looked up the side track and saw the cars coming rapidly, and noticed that the coupler on the cab was not in the center, and to carry out *Page 414 
the order of the conductor to make the coupling, he kicked at the bumper on the cab to get it in the center, and his foot was instantly caught between the couplers on the two cars and badly crushed.
We are not disposed to modify in the least the decision made in Greenleev. R. R., 122 N.C. 977; 41 L.R.A., 399, in which we decided that the railroad companies in this State should equip both their passenger and freight cars with self-couplers; and we are of the opinion that a neglectful failure to keep the couplers in proper condition and repair would be as culpable as if the cars had never been so equipped.
But, as we have said in the case before us, the plaintiff was not hurt by the failure of the company to have a self-coupler on the car or for a failure to keep it in repair. The plaintiff, when he opened the lip of the coupler, had restored it to its full usefulness, and in his kicking the bumper afterwards when he saw the freight cars rapidly approaching him and, indeed, so near to him as to be right upon him — for his foot was caught before he could get it down — he violated a rule of the company which he knew of, and which rule put the blame on himself. That he contributed to his own injury is too clear to admit of doubt, from his own testimony. According to the plaintiff's evidence the order was given by the conductor, not upon a certain emergency without the opportunity of reflection, and obedience was a choice of two dangers.
The petition to rehear is allowed, and there must be a
New trial.
(Petition allowed.)