## KANSAS CITY SOUTHERN RY. CO. v. PRUNTY.

(Circuit Court of Appeals, Fifth Circuit, October 4, 1904. On Rehearing, December 3, 1904.)

### No. 1,320.

1. FEDERAL COURTS—JURISDICTION—DUTY TO EXAMINE RECORD.
    It is the duty of a Circuit Court of Appeals of its own motion to examine the record in a cause brought before it to test its own jurisdiction and that of the court below.

2. REMOVAL OF CAUSES—DIVERSITY OF CITIZENSHIP—SUFFICIENCY OF PETITION.
    Where the jurisdiction of a federal court depends upon the citizenship of the parties, such citizenship, and not merely their residence, must be shown by the record; and a right of removal on the ground of diversity of citizenship is not shown by a petition therefor which does not allege the citizenship of the plaintiff, although his petition in the state court alleges him to be a resident of the state in which the action is brought.

3. SAME—IMPROPER REMOVAL—COSTS.
    Where the judgment of a Circuit Court is reversed by the Circuit Court of Appeals on the ground that the cause was improperly removed from a state court, costs should be awarded against the removing party.

On Rehearing.

4. SAME—AMENDMENT OF PETITION IN APPELLATE COURT—JURISDICTIONAL AVERMENTS.

A Circuit Court of Appeals may properly permit the amendment in that court of a petition for removal by supplying an averment of citizenship requisite to give jurisdiction, where it appears that its omission was inadvertent and it is shown by stipulation of the parties that the requisite diversity of citizenship in fact existed.

5. MASTER AND SERVANT—ACTION FOR INJURY OF SERVANT—CONTRIBUTORY NEGLIGENCE.

Plaintiff stood on the footboard at the back of an engine to make a coupling to a car toward which the engine was moved slowly. The drawbar on the car was out of repair, and was not in line with that on the engine, and plaintiff attempted to shove the drawbar on the engine to one side with his foot, so as to meet that on the car, when the engine lurched by reason of a defect in the track, and plaintiff's foot was caught and crushed between the two drawbars. There was evidence tending to show that such manner of making a coupling was customary and safe under ordinary circumstances, and that plaintiff would not have been injured if it had not been for the defect in the track; also that there was no rule of the railroad company prohibiting brakemen from going between the cars to make a coupling or requiring the engine to be stopped while the drawbars were moved. Held, that under the evidence plaintiff could not be said as matter of law to have been chargeable with contributory negligence. Pardee, Circuit Judge, dissenting.

6. SAME—PROXIMATE CAUSE OF INJURY.

It is an essential element in contributory negligence to defeat a right of action for an injury that there should be a causal connection between the act charged as negligence and the injury, and when the act and the injury are not known by common experience to be naturally and usually in sequence, and the injury does not according to the ordinary course of events follow from the act, they are not sufficiently connected to make the act a proximate cause of the injury.

7. INSTRUCTIONS—SUFFICIENCY OF EXCEPTIONS.

A general exception to a charge, or to a portion thereof containing different propositions, is unavailing, if any of such propositions are correct.

In Error to the Circuit Court of the United States for the Western District of Louisiana.

Samuel W. Moore and J. D. Wilkinson (T. Alexander, on the brief), for plaintiff in error.

J. A. Thigpen, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This suit was brought in the First Judicial District Court of Caddo parish, La., by Clark Prunty against the Kansas City Southern Railway Company to recover damages for personal injuries received by the plaintiff, who is defendant in error, while acting as a brakeman in the employ of the defendant, who is plaintiff in error. The case was removed to the Circuit Court of the United States for the Western District of Louisiana on the application of the railway company, and was tried before a jury, and verdict and judgment had against the railway company.

There are limits imposed by law to the jurisdiction of the United States courts, and it is an inflexible rule that this court of its own motion should examine the record to test its own jurisdiction and the jurisdic-

tion of the court below. M., C. & L. M. Ry. Co. v. Swan, 111 U. S. 379, 4 Sup. Ct. 510, 28 L. Ed. 462; Grace v. Amer. Cent. Ins. Co., 109 U. S. 278, 3 Sup. Ct. 207, 27 L. Ed. 932. The ground upon which it was sought to remove this case from the state to the federal court was that it is a case between citizens of different states. No other ground of federal jurisdiction is suggested. The petition for removal was filed by the defendant, the Kansas City Southern Railway Company, and the following is all that the petition contains on the question of the citizenship of the parties:

"While the defendant is now, and was at the date of bringing said action, and long before, and has always been, a resident and domiciled in the state of Missouri, and is not, nor has it ever been, a resident of the state of Louisiana, or domiciled therein, having only an agent, viz., T. Alexander, of your said parish and state, on whom process might be served; but your defendant was at time of filing this suit a citizen of the state of Missouri, and is still a citizen thereof, residing in the city of Kansas City, of said state of Missouri, and no other, while said plaintiff is a citizen and resident of the state of ———; and your petitioner desires to remove this suit, before the trial thereof, into the next Circuit Court of the United States to be held in the Western District of Louisiana."

A corporation created by and doing business in a state is to be deemed, for the purpose of fixing the jurisdiction, a citizen of such state. It would have been sufficient, therefore, so far as the status of the petitioner was concerned, to have averred that the petitioner was a corporation chartered or organized under the laws of Missouri. But it is not alleged that it is a corporation. It may be a joint-stock company, so far as the averments of the petition are concerned. It is at least doubtful whether the petition is sufficient to show the status of the petitioner so as to affirmatively show federal jurisdiction. In the Lafayette Ins. Co. v. French, 18 How. 404, 15 L. Ed. 451, it was held that it is not enough, in order to give jurisdiction, to say that the corporation "is a citizen of the state where the suit is brought." See, also, Muller v. Dows, 94 U. S. 444, 24 L. Ed. 207. We do not dwell on this phase of the case, however, because in the petition filed by the plaintiff in the state court declaring his cause of action it is stated that the Kansas City Southern Railway Company is "a corporation organized under the laws of Missouri," and this averment makes the record show the status of the company, and would supply the defect in that regard of the petition to remove.

But the petition entirely fails to show the citizenship of Clark Prunty, the plaintiff suing in the state court. The only averment is that the "plaintiff is a citizen and resident of the state of ———." How the petitioner intended to fill the blank left we have no means of telling. If the petition to remove, aided by the other parts of the record, shows that the petitioner was a corporation organized under the laws of Missouri, it does not affirmatively show that Clark Prunty was not a citizen of Missouri; and if he is a citizen of Missouri the federal court has not jurisdiction of the case. We have carefully examined the record to see if any part of it would supply the defect. We find nothing to show that Clark Prunty is a citizen of a state other than Missouri. In the petition filed in the state court by him stating his cause of action he describes himself as a "resident of Caddo parish, Louisiana." But this aver-

ment does not supply the defect. When the jurisdiction of a court of the United States depends on citizenship of the parties, such citizenship, and not simply their residence, must be shown by the record. Abercrombie v. Dupuis, 1 Cranch, 343, 2 L. Ed. 129; 1 Rose's Notes, 177; Robertson v. Cease, 97 U. S. 647, 24 L. Ed. 1057; Mexican Central Ry. Co. v. Duthie, 189 U. S. 76, 23 Sup. Ct. 610, 47 L. Ed. 715; Horne v. Hammond, 155 U. S. 393, 15 Sup. Ct. 167, 39 L. Ed. 197; Denny v. Pironi, 141 U. S. 121, 11 Sup. Ct. 966, 35 L. Ed. 657. The record failing to affirmatively show the jurisdiction of the Circuit Court, that court should have remanded the case to the state court.

The cause was improperly removed to the Circuit Court. The costs should be awarded against the party wrongfully removing the cause. M., C. & Lake M. Ry. Co. v. Swan, 111 U. S. 379, 4 Sup. Ct. 510, 28 L. Ed. 462.

The judgment of the Circuit Court is reversed, with costs against the plaintiff in error, and the case is remanded to the Circuit Court, with directions to proceed according to law and in conformity to the opinion of this court; and it is so ordered.

## On Application for Rehearing.

Heretofore a judgment was entered in this court, reversing the judgment of the Circuit Court, because the record did not show the facts necessary to sustain the jurisdiction of the Circuit Court. Afterwards the following petition for a rehearing and agreement of counsel was filed in this court:

"In the above entitled and numbered cause, now comes the plaintiff in error, and, with the leave of the court and with the consent of the defendant in error, shows unto the court that at the time of filing the petition for removal from the state court to the Circuit Court of the United States for the Western District of Louisiana, it was a corporation organized under the laws of the state of Missouri, and no other, and a citizen of that state, and no other, with its domicile at Kansas City, in said state, and that the defendant, Clark Prunty, was a citizen and resident of the state of Louisiana, and no other, both at the time of filing his said suit and at the time of said application to remove said cause, and still is a citizen of said state; that through an oversight the state in which said defendant had his domicile as aforesaid was left blank in the petition asking said removal, but said diverse citizenship was averred in said petition for removal, and appears from said petition of said defendant in error to the state court, in which he set forth that he was a resident of the state of Louisiana, meaning thereby that he was a citizen thereof, and that your petitioner was a corporation organized under and domiciled in the state of Missouri; and, as a fact, diversity of citizenship still exists, and your petitioner desires to amend hs original pleading, so as to conform to the facts as existing at the time and still existing. Premises considered, plaintiff in error prays to be permitted to amend its petition for removal herein in this court, so as to show the true facts existing, and asks in the interest of justice that this amendment be allowed in this court, and for general relief.

"J. D. Wilkinson, Attorney for Plaintiff in Error.

"Personally came and appeared J. A. Thigpen, a person to me well known, a resident of the parish of Caddo, state of Louisiana, who stated and declared to me, notary, that he is attorney for the defendant in error in the case of Kansas City Southern Railway Company v. Clark Prunty, above set forth, and that he admits all of the facts stated in the foregoing application to be true, and hereby specially consents that the court permit said amendment to be filed and considered a part of the record on appeal in said case, and he

hereby consents on the part of said Clark Prunty that the court consider the merits of said cause, because he admits as a fact that the diverse citizenship of the parties to said suit did exist at the time of filing said suit and at the time of filing said petition for a removal thereof, and still exists.

"In testimony whereof, he has hereunto affixed his name in presence of the attesting competent witnesses on this, the 5th day of October, 1904.

"J. A. Thigpen, Attorney for Clark Prunty.

"E. F. Thigpen, Notary Public.

"Attest:   J. C. Pugh,

"J. M. Foster.

"State of Louisiana, Parish of Caddo.

"Personally appeared J. D. Wilkinson, a person to me well known, who, being by me duly sworn, says that he is the attorney for the Kansas City Southern Railway Company, plaintiff in error in the above entitled and numbered cause; that he has read the application aforesaid, hereto attached; and that all the facts stated therein and allegations made therein are true and correct, to his own knowledge.

"Sworn to and subscribed before me this the 6th day of Oct., 1904.

"J. D. Wilkinson.

"John F. Slattery, Notary Public."

SHELBY, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

Both parties having appeared in this court and agreed in writing that the defective allegation of citizenship be amended, it is proper, we think, under the circumstances, to permit the amendment to be made. Kennedy v. Georgia State Bank, 8 How. 586, 12 L. Ed. 1209; Fletcher v. Peck, 6 Cranch, 126, 3 L. Ed. 162; Fitchburg Railway Company v. Nichols, 85 Fed. 869, 29 C. C. A. 464. The record being amended, so as to remove the defect pointed out in our former opinion, the application for a rehearing is allowed, and the judgment heretofore rendered by this court, reversing the judgment of the Circuit Court, is set aside.

The cause has been argued orally by counsel for both parties, and also submitted on briefs, and we now proceed to examine the case on its merits. This is an action for damages for personal injuries received by Clark Prunty, the plaintiff in the court below and the defendant in error here (who will be referred to hereafter as the plaintiff), while engaged in the performance of his duty as an employé of the plaintiff in error, the Kansas City Southern Railway Company (which will be referred to hereafter as the railway company). The following excerpt from the petition briefly describes the way in which the injury occurred:

"In undertaking to couple said car to his said train, after it had been placed on the main line, the engine drawing the train on which the petitioner was employed was backed toward said car in order to make said coupling, and that your petitioner was riding on the footboard on said engine; that your petitioner, standing on the footboard of said engine as it approached said car, noticed that the drawbar on said car was not in proper position, and noticed that same would have to be moved to one side before a coupling could be made; that as the engine approached very near to said car, being at that time almost at a standstill and moving very slow, your petitioner attempted to shove said drawbar to its proper place with his foot, and that, as he was in the act of shoving the said defective drawbar to its proper place, the engine suddenly and without warning dipped or lurched to one side, causing petitioner to lose his balance, and causing his foot to be caught between said drawbar and the coupling on the engine; that, as thus caught, his foot was broken, mangled, and badly crushed."

The negligence alleged is the defective and dangerous condition of the track and the defective and dangerous condition of the drawbar. The answer of the railway company denied the allegations of negligence on its part, and averred that the accident occurred by reason of the contributory negligence of the plaintiff. The case was tried on these issues, and resulted in a verdict and judgment for the plaintiff. The assignments of error will each be considered.

The first is that the court refused to instruct the jury to find for the railway company. The plaintiff himself testified that he was on the footboard of the engine, which was moving slowly towards the car to which the coupling was to be made. Just before the engine and the car came together, he discovered that the drawbar on the engine was not in line to meet the drawbar on the car, so as to effect the coupling; that the engine and the car came together, and the coupling was not made. The car and engine then separated. Immediately the engine was pushed slowly back towards the car to make the second effort to effect the coupling. The plaintiff was standing up, holding with one hand to steady himself, and in the other hand he had the brake lever, and he was in the act of pushing the drawbar on the engine so as to put it in line to meet the drawbar on the car, when the engine ran on a defective place, or a low place in the track, and the lurch came which made him lose his balance, and his right foot was crushed between the cars. His evidence is to the effect that, but for the defect in the track, he could have easily made the coupling without danger to himself; and, except for the defect in the drawbar, causing it to hang to one side, so as not to be in alignment with the other drawbar, the coupling would have been made without his interference when the engine and car first came together. The plaintiff's evidence as to the defective condition of the track and the drawbar is strongly corroborated by several witnesses. There could be no question, therefore, about the proof being sufficient to submit the question of the railway company's negligence to the jury.

The main contention of the railway company is that the court erred in not instructing the jury to find for the defendant company because of the contributory negligence of the plaintiff. The evidence tends strongly to show that the effort that the plaintiff made to couple the cars was made in the usual way under the circumstances that existed, and that it was the safest way; that he was in less danger to use his foot to change the position of the drawbar, than if he had lain down and used his hand. The question on the first assignment of error resolves itself into this inquiry: Was it so clearly the duty of the plaintiff to stop the car and adjust the drawbar that the court as a matter of law should instruct the jury that he was guilty of contributory negligence? The question of negligence is usually one for the jury. It is well settled, however, that the court may direct a verdict for the plaintiff or the defendant on the question of negligence, where the evidence is undisputed and is of such conclusive character as to the inferences to be drawn that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it. But can it be said that this case is of that kind? The evidence tends to show that the car was moving very slowly, and

that the act of the plaintiff alleged to be negligent would have been safe, except for the defect in the roadbed. The manner in which the plaintiff was endeavoring to perform his duty was the usual way under the circumstances. The fact that it was the usual way does not, of course, remove the stamp of negligence, if that way was dangerous, and there was another way to safely perform the same duty; but, when the evidence shows, as it does here, that the brakemen had for many years performed the duty in the way in question without injury or apparent danger, it tends strongly to show that the mode, if the roadbed was in good condition, was not dangerous in the sense that would make the plaintiff guilty of contributory negligence.

There was no rule of the railway company, as there was in some of the cases cited by counsel, that required the train to be stopped to couple the cars, or that forbade the brakemen going between the cars to couple them. A witness for the plaintiff testified on cross-examination that there was such a rule, but no such rule was produced, by the railway company, and at a later period of the trial the "defendant" offered in evidence the rules of the company as to the duties of brakemen to show that there was no rule on the subject. The custom of the brakemen to couple the cars while the trains were in motion, which custom was proved without objection, was not, therefore, shown to be in conflict with the rules of the company. The record would not justify the court in assuming that the plaintiff was guilty of contributory negligence upon the theory that he violated a rule of the company. The position of the railway company may be best stated in the words of its distinguished counsel:

"Upon the undisputed testimony the court should have directed a verdict for the defendant, upon the theory that, where there is a safe way and a more dangerous way known to the servant by which he may discharge his duty, it is negligence for him to select the more dangerous method, and he thereby assumes all risk of injury therefrom."

The meaning of this position appears from what follows: "If he had stopped the engine," etc., then there would have been no danger. It is true that, when there is a comparatively safe and a more dangerous way known to a servant by means of which he may discharge his duty, it is negligence for him to select the more dangerous method, and he thereby assumes the risk of the injury it entails. But is this principle applicable to this case? The duty the plaintiff was attempting to perform was to couple the moving engine to the car. If he carefully and without negligence attempted to perform that duty, does it charge him with negligence as matter of law to show that he would not have been hurt if the engine had been stopped? If a conductor were going from one car to another in the performance of his duty, and was injured by reason of a defect in the car or in the roadbed, would it be a defense to his action for damages to say that he would not have been injured if he had stopped the cars before he attempted to pass from one car to the other? We think not, because such delay would be impracticable; and it is his duty to pass from one car to the other, and he is not expected to stop the train for that purpose. The evidence abundantly shows that neither the railway company nor its employés considered it the duty of the brakeman to stop the cars to

couple them. The fact is apparent, without evidence, that cars apart must be moved together to be coupled. The record shows that it was not unusual for the drawheads to get out of line, and a witness was asked:

"What was the rule with brakemen? Would they stop the engine, and shove it over, rather than use their foot?"

He answered:

"I never stop them; been railroading twenty years. If we stopped them every time for that, we could not get freight over the road."

It seems evident that when a drawhead is out of line by reason of defects, causing it to swing loose, lower, or to one side, if the engine is stopped to adjust it, the subsequent movement of the car, or probably gravity alone, would cause it to resume its original position out of line, and that the coupling at last could only be made by adjusting it as the car and the engine come together. The act of coupling or uncoupling cars while in motion, by going between them, though attended with more or less danger, has been often held, under the circumstances of the particular case, not to constitute negligence as matter of law. Snow v. Housatonic R. R. Co., 8 Allen (Mass.) 441, 85 Am. Dec. 720, cited and approved in Gardner v. M. C. R. R. Co., 58 Mich. 584, 592, 26 N. W. 301; Eastman v. Railway Co., 101 Mich. 597, 60 N. W. 309; Ashman v. Railroad Co., 90 Mich. 567, 51 N. W. 645; Porter v. Railroad Co., 71 Mo. 66, 36 Am. Rep. 454; Preston v. Central R. R. & Banking Co., 84 Ga. 588, 11 S. E. 143; Curtis v. Railway Co., 95 Wis. 460, 70 N. W. 665. See, also, Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485.

There are two essential elements in contributory negligence—a want of ordinary care, and a causal connection between the act and the injury complained of. Beach on Cont. Neg. (2d Ed.) §§ 7, 19. As to the first, the question is: Should we hold as a matter of law that the plaintiff was negligent; that he did something which a prudent and reasonable man, under the circumstances proved, would not do? The evidence tends to show that the act which is charged to be contributory negligence was not unusual and was generally safe; that the plaintiff was not a trespasser or interloper, but was at the place to which his employment called him; and that he was violating no rule of the railway company, but, on the contrary, was pursuing the course usual with others engaged in its service. But if the plaintiff's act was one showing a want of ordinary care, before it could be deemed contributory negligence to defeat his action, it must appear to be a proximate cause (not the sole proximate cause) of the injury; that is, there must be a causal connection between the act and the injury. Beach on Cont. Neg. (2d Ed.) §§ 25, 26. Can the plaintiff's act be so considered? As has been said, the act was not unusual and was generally safe; and some of the evidence tended to show that under the circumstances he pursued the safest way to effect the coupling. When the act and the injury are not known by common experience to be naturally and usually in sequence, and the injury does not, according to the ordinary course of events, follow from the act, then the act and the injury are not sufficiently connected to make the act the proximate cause of the

injury.  Cooley on Torts (2d Ed.) 73;  Beach on Cont. Neg. 32.  We do not think the trial court erred in refusing to direct a verdict for the defendant on the ground that the plaintiff was guilty of contributory negligence.

The second assignment of error is in these words:

"The court erred in charging the jury as follows:

" 'If you find the method or way he was using to make the coupling was one of the ways frequently or ordinarily used by brakemen under such conditions, and that he was at the time under the circumstances prudently using that way, he was not guilty of contributory negligence.'

"And again:

" 'It is contended on the part of the defendants that the weather and frequent rains had caused such defects, if there was any; that is, if there were any defects in the condition of the track, the rainy weather was the cause of such defects, and the defendant is excusable.  On this issue, there being no evidence one way or the other as to directly show when the defects in the track occurred, or how they were caused, or what was done to avoid such defects, I charge in the case presented you should not consider any excuse along that line offered by defendant.' "

This excerpt from the charge is excepted to and assigned as a whole as error, without specifying the part of it to which objection is made. The last paragraph of the charge is simply to the effect that a contention of the railway company, which there is no evidence to support, need not be considered by the jury.  This is so clearly correct that we need not further comment on it.  This, in fact, disposes of the whole assignment; for an objection to an entire charge, consisting of several propositions, some of which are right, should not be sustained, even if the charge contained errors not specifically pointed out.  Lincoln v. Claflin, 7 Wall. 132, 19 L. Ed. 106;  Anthony v. L. & N. R. R. Co., 132 U. S. 172, 10 Sup. Ct. 53, 33 L. Ed. 301.

But we find no error in the first paragraph of the charge, when construed with other portions of the general charge.  Immediately preceding the paragraph in question, the court had instructed the jury:

"Now, considering the case, I suggest that you apply the evidence as to these issues.  Was the plaintiff, under all the circumstances surrounding the time and place he was hurt, endeavoring with prudence and due care to effect the coupling?  If you find favorable to him on this issue, it will follow that he was not guilty of contributory negligence."

And further, on the subject of contributory negligence, the court said:

"I charge you that if you find that the plaintiff, in attempting to effect a coupling of the engine to the car, assumed a dangerous position to do so, and there was any other practicable and safer way in which he might have made the coupling, he would then be guilty of contributory negligence, and would be debarred from a recovery."

We do not think that the charge, taken as a whole, asserts the objectionable doctrine that the habitual negligence of others would excuse the negligence of the plaintiff; and, however that may be, the language on which it is now sought to place that construction was not separately excepted to, nor is it specifically assigned as error.

The third assignment is that the trial court erred in refusing to grant a new trial.  The granting or refusing of such motion, as has been fre-

quently decided by this court, was within the discretion of the lower court, and is not the proper subject of an assignment of error here.

The fourth assignment of error is in effect that the court erred in refusing to give 14 special charges requested by the railway company. The railway company was not entitled to have all these charges given to the jury, because we find by an inspection of the several bills of exception that many of them were properly refused, as shown by the record, for the reason that they were covered by the general charge. Anthony v. L. & N. R. R. Co., 132 U. S. 172, 10 Sup. Ct. 53, 33 L. Ed. 301.

The fifth assignment is that the court erred in entering a judgment in favor of the plaintiff. There was, of course, no error in entering a judgment on the verdict.

We are of the opinion that the record, as now amended by consent, contains no reversible error. The judgment of the Circuit Court is therefore affirmed.

PARDEE, Circuit Judge. I concur in reinstating the case on the consent of both parties, but I dissent on the merits. On his own showing and under the undisputed facts in the case, Prunty contributed to his own injury. In coupling the engine to the cars there was a safe way and a dangerous way. Of his own motion he selected the dangerous way. Thereby and therein he was injured. The couplers in use were automatic, and he knew that the drawhead on the car was out of alignment and out of order, and he knew, or ought to have known, that from bad weather and repairing then going on the track was uneven and irregular, and these facts particularly cautioned him, in trying to make the necessary coupling, not to resort to the dangerous way of mounting the rear of the engine (then going backwards at about six miles an hour) so as to push over the drawbar or drawhead of the engine to properly meet and connect with the drawhead of the car, which was out of order and out of alignment. All this is sound in principle and good law (Bailey on Personal Injuries, vol. 1, §§ 1121–1123) and well supported by adjudged cases. See Cunningham v. Railroad Co. (C. C.) 17 Fed. 882; Gleason v. Railroad Co., 73 Fed. 647, 19 C. C. A. 636; Morris v. Railway Co., 108 Fed. 747, 47 C. C. A. 661; Dawson v. Railway Co., 114 Fed. 870, 52 C. C. A. 286; Gilbert v. Railway Co. (C. C.) 123 Fed. 832; Hurst v. Railroad Co., 163 Mo. 309, 63 S. W. 695, 85 Am. St. Rep. 539; Elmore v. Seaboard Air Line Co. (N. C.) 42 S. E. 989; Karrer v. Detroit Railway Co., 76 Mich. 400, 43 N. W. 370; Central of Ga. Ry. Co. v. Mosely (Ga.) 38 S. E. 350; Alabama Ry. Co. v. Ritchie (Ala.) 20 South. 49; George v. Mobile Ry. Co., 109 Ala. 245, 19 South. 784.

The trial judge, in charging the jury, instructed them, over the objection of the defendant, as follows:

"If you find the method or way he was using to make the coupling was one of the ways frequently or ordinarily used by brakemen under such conditions, and that he was at the time under the circumstances prudently using that way, he was not guilty of contributory negligence."

Prunty's own witnesses testified, and there was no dispute about it, that to make such a coupling as the one in question the engine could

have been stopped and the drawheads aligned before backing the cars together, and that this method was without hazard to the brakeman. In my judgment, and as I understand the principles declared in the above-cited cases, no amount of usage justifies an employé, without superior orders and in the absence of extraordinary emergency, in taking a dangerous way to perform a duty when a safe one is at hand. The test of negligence on the part of the brakeman is not what other brakemen habitually and customarily do. They may be prudent or negligent; and after all, as said in Dawson v. Railway Co., supra, "the inherent quality of an act is not changed, whether it is done by one or many." Habitually careless or negligent conduct on the part of many cannot make such conduct prudent in the eye of the law. In Warden v. Louisville & N. R. Co. (Ala.) 10 South. 279, 14 L. R. A. 552, the court said:

"The fact that one is in the habit of doing an obviously dangerous thing does not make his act any the less a dangerous one. The fact that many or all of a limited class of persons customarily ride upon the pilot of an engine does not alter the characteristic of obvious peril which the law imputes to that position. It is negligence per se for persons to walk upon the track of railroads. Doubtless many persons are in the habit of using the track in this way. Yet it has never been supposed, and it cannot be the law, that such customs would convert the track, which the law declares to be per se a dangerous place, into a safe place. So a person may be in the habit of crossing railway tracks without stopping and looking and listening for approaching trains; yet we have never heard it suggested [that] such person, when he finally reaps the penalty of his lack of care, is, because of such habit, not guilty of contributory negligence as a matter of law. Custom and usage may be relied upon to excuse the violation of a rule when the act involved is not negligent in itself."

As to some of the adjudged cases cited in the court's opinion, I have only to say that when the link and pin coupling was in use it was not negligent, as a matter of law, to step between moving cars to couple or uncouple them; but since the introduction and common use of automatic couplers, as in this case, I am confident that the rule is, and ought to be, that going between moving cars to couple or uncouple them is negligent as a matter of law. An act of Congress requires the introduction and use of automatic couplers, and it is common knowledge that, when in use, there is a distance of about two feet and a half between cars and a foot and a half between the wooden bumpers placed on the cars, and surely it requires no evidence nor controlling authority to show that to go between cars thus provided, when they are coming together, for the purpose of coupling, is extremely dangerous and decidedly negligent.