CHRISTIAN RAHMAN *vs.* MINNESOTA & NORTHWESTERN RAILROAD COMPANY.

February 18, 1890.

Master and Servant—Contributory Negligence.—The testimony in this case examined and considered, upon defendant's contention that it clearly appeared therefrom that plaintiff contributed to the negligence which is said to have caused the injury received by him while in defendant's employ. *Held,* that said testimony does not show plaintiff to have been guilty of contributory negligence.

Appeal by defendant from a judgment of the district court for Ramsey county, where the action was tried before *Wilkin,* J., a verdict of $2,406.25 rendered for plaintiff, and a motion for a new trial denied.

*Lusk & Bunn,* for appellant.

*H. C. McCartey,* for respondent.

COLLINS, J. Action to recover damages for an injury alleged to have been caused by defendant's negligence. Plaintiff obtained a verdict, and on the presentation of the appeal, which was from a judgment entered after an order refusing a new trial, the only point relied upon by the appellant was that from the testimony it clearly appeared that plaintiff was guilty of contributory negligence at the time the injury was inflicted. Plaintiff was a "wiper" in the defendant's employ, at one of its round-houses, and had been so employed

about three months. Previous to this he was inexperienced in the business of railroading. As a wiper it was his duty to wipe off and clean locomotives as they arrived and departed, and to go with the dispatcher, or "hostler," as he is generally called, when the latter, acting as an engineer, ran the locomotive to and from the round-house to the main track, at which point the regular engineer customarily assumed or surrendered control. When with the dispatcher upon the locomotive, it was plaintiff's duty to aid in putting in water and fuel, to open and close switches, and, occasionally, to couple the locomotive on to cars which might have to be moved a short distance. No instructions had been given plaintiff in the art of coupling cars, nor had he been advised as to any rules which required the use of signals to or from the dispatcher, by the use of a bell or otherwise, except that he had observed that it was the usual practice for the acting engineer to receive a signal from the person who was to make the coupling, when ready to do so, and that on one occasion he had been told by the dispatcher that they dare not move the engine before ringing the bell. On the day of the accident plaintiff was with this same dispatcher upon an engine which had to be placed temporarily upon a side track. On this track stood some cars which the locomotive would have to move in order to make room for itself. It had stopped some 10 feet from these cars; the plaintiff was on the ground, and, under orders from the dispatcher, as he testified, stepped to the end of the cars, that he might couple them on to the locomotive. Finding the pin fast in the draw-head upon the car, he stepped to the tender of the locomotive, obtained another pin, returned to the car, and, while attempting to drive the fastened pin out of the draw-head, was struck by the locomotive, which, without any warning whatsoever, had been moved back upon him by the dispatcher. That the latter was negligent is conceded, but, as before stated, the defendant insists that the plaintiff contributed to this negligence, and hence cannot recover. Although there was testimony tending to show that plaintiff, when struck, stood with his back to the locomotive in an unsafe and improper position when actually coupling cars, it must be borne in mind that the dangerous position was not assumed while anticipating, or having reason to expect, the approach of the locomotive,

but for the purpose of removing the pin from the draw-head of the car. Directed by the dispatcher, as plaintiff testified, to make the coupling, plaintiff had gone to the end of a car to prepare it for the connection, leaving the locomotive motionless upon the track, 10 feet distant. Although an inexperienced man, (which seems to have been known to the dispatcher and yard-foreman,) he had not been instructed in any way as to coupling cars, or as to the rules, if there were any, which regulated moving locomotives about to connect with stationary cars. He had observed, however, that, under circumstances like these, it was the prevailing custom, which was not denied by the appellant, for the acting engineer to await a signal from the person upon whom devolved the duty of coupling, before putting his engine in motion. He had also been informed on one occasion, by this same dispatcher, that they dare not move the engine before sounding the bell. The circumstances under which this remark was made might be of importance in determining just what was intended by it, and what plaintiff should have understood, but this was a matter for the consideration of the jury. When the plaintiff went to the end of the car and endeavored to remove the pin, he was engaged in the performance of a duty, was rightfully there, and certainly his position would have been a safe one, had his signal been waited for, or, perhaps, if the bell had been rung, before putting on steam. The law imposed upon him the exercise of ordinary care and prudence, and in considering what this is, under a given state of facts, regard must be had for the danger to be apprehended, the reasonable probability of incurring it, as well as the natural presumption that other persons will discharge their duty, and act with due care. In this case it was for the jury to say whether, under all of the circumstances, the plaintiff had the right to rely upon his knowledge of the practice in regard to signals from the person engaged in coupling, and upon what had been stated to him about sounding the bell before starting the engine.

Judgment affirmed.