TULLIS v. LAKE ERIE & W. R. CO.

(Circuit Court of Appeals, Seventh Circuit. January 15, 1901.)

No. 455.

1. BILL OF EXCEPTIONS—TIME FOR SETTLING—PENDENCY OF MOTION FOR NEW TRIAL.

When, by reason of a motion for a new trial or rehearing, or to set aside the judgment, entered at the term when the judgment was rendered, the power of the court over the judgment is retained, a bill of exceptions may be settled, or time given for preparing it when the motion is overruled, whether at the same or a later term.

2. NEW TRIAL—PROCEDURE IN FEDERAL COURTS—STATE PRACTICE.

Rev. St. § 914, does not require conformity to the state practice by the federal courts in respect to motions for new trial or bills of exceptions, and, where a motion for new trial was filed and disposed of in accordance with a rule of court, it is immaterial that the requirements of the state practice were not observed.[1]

3. MASTER AND SERVANT — RULES OF RAILROAD COMPANY — EVIDENCE OF WAIVER.

A railroad company may waive any of its rules governing employés, and where, in an action by an employé for a personal injury, it invokes such a rule, and its nonobservance by the plaintiff, as a defense, evidence is

---

[1] Conformity to practice in state courts, see notes to O'Connell v. Reed, 5 C. C. A. 594, and Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.

competent to show that the rule was never observed by employés, nor insisted on by their superiors, and the question of waiver is one for the jury.

**4. SAME—ACTION FOR INJURY OF SERVANT—EVIDENCE.**

In an action by a brakeman against a railroad company to recover for a personal injury, where it is shown as a defense that at the time of the injury plaintiff was not in the place required by a rule of the company, testimony of the division superintendent that he would discharge any employé who persistently violated such rule to his knowledge is not a statement of fact, and is incompetent to disprove a waiver of the rule by the company.

**5. SAME—VIOLATION OF RULES BY SERVANT.**

Where the rules of a railroad company provided that brakemen should be under the direction of the conductor at all times when on duty, and should remain at their post of duty at all times unless excused by the conductor, and further provided that conductors on freight trains should require their brakemen to be on top of the cars when ascending or descending grades, it cannot be held as a matter of law that a brakeman violated his duty by being in the caboose, with the knowledge and acquiescence of the conductor, when the train was starting up a grade.

**6. SAME—CONTRIBUTORY NEGLIGENCE.**

Plaintiff, who was rear brakeman on a freight train, was in the cupola of the caboose when an engine which was to assist in pushing the train up a grade was negligently run against the caboose with such violence as to derail it, by which plaintiff was thrown to the ground and injured. *Held* that, conceding that plaintiff's duty required him to be on top of the cars, his remaining in the caboose was not negligence which contributed to his injury in a legal sense, but was a mere condition of the injury, since the rule requiring him to be outside was not made for his protection, and, under any ordinary circumstances, he would be safer inside the caboose than on top of the train.

In Error to the Circuit Court of the United States for the District of Indiana.

The plaintiff in error, Hosea B. Tullis, employed as a rear brakeman upon a freight train of the Lake Erie & Western Railroad Company, going eastward on the night of February 10, 1895, was injured by the negligent management of a locomotive which was following the train for the purpose of pushing it over a steep grade up which it had started or was just about to start. The pusher ran against the caboose of the train with such violence as to throw it from the track. The plaintiff, who was at the time in the cupola on the caboose, observing that a collision was imminent, endeavored to escape through a side window, but was thrown by the violence of the shock upon the frozen ground, and seriously injured. The engineer whose negligence is alleged to have caused the injury being a fellow servant, it was only by virtue of the act of the Indiana legislature approved March 4, 1893 (Sess. Laws 1893, p. 294), that the action could be maintained. The constitutionality of that act was denied in this case, but, upon certification of the question by this court to the supreme court, has been established by the decision of that court. Tullis v. Railroad Co., 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192. It now remains, therefore, to consider whether in the proceedings at the trial there intervened error for which the judgment should be reversed. The errors alleged and insisted upon relate to the exclusion and admission of evidence, and to the refusal of requests for instruction.

The following rules of the company, under the titles quoted, were read in evidence:

"Conductors Have Control of Their Men."

"(90) Conductors have full control of all men placed under their direction, and will be held strictly responsible, with the men, for any violation of the rules and regulations, or the want of judgment and action in emergencies. They must know that their men are at all times at their posts of duty. One man must invariably be kept on the rear car of every train while in motion,

and on freight trains one man must be kept on the forward end or on the engine in bad weather. They must have in their possession at all times the proper danger signals, ready for use in an emergency. Passenger brakemen must take their position near the door, never using a seat when in use or needed by passengers, and must refrain from any discussions or arguments with the passengers."

### "Freight Men on Top of Trains."

"(93) Freight conductors are expected to ride on top of the train as much as possible; where they can apply the brake if necessary, and see that their brakemen do their duty. They must require all the brakemen to be on top of the train at least one-half mile before arriving at and while passing all stations and stopping places, descending or ascending grades, or at any point or time when extra precaution is necessary to ensure safety."

### "For Brakemen—Brakemen Study Time Table."

"(128) Brakemen are under the direction of the conductor at all times when on duty with their trains. They are expected to study and become familiar with the time table and the rules and regulations of the service."

"(132) They must remain at all times at their post of duty, unless excused by the conductor, or another brakeman must perform his duties."

Addison C. Harris, for plaintiff in error.

W. H. H. Miller and John B. Cockrum, for defendant in error.

Before WOODS and JENKINS, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The specifications of error relied upon all depend upon the bill of exceptions, and, it is insisted, cannot be considered because the bill was not signed, nor time for the preparation and filing thereof extended, during the term at which the trial was had and judgment entered. It appears, however, that a motion for a new trial, and briefs in support of it, were filed a few days before the close of the term. According to the docket entry, this was done in open court before the judge who presided at the trial; but it is stated in the bill of exceptions that the motion and brief were filed in the clerk's office, and were not brought to the attention of the judge until an early day in the next term of the court. The briefs were filed in conformity to the rule of court adopted on September 27, 1892, to the effect that all motions, demurrers, or exceptions thereafter filed should be supported by briefs filed therewith in duplicate, of which the clerk should forthwith notify the adverse party, to whom fifteen days should be allowed for filing answering briefs, and that, if oral argument should be desired by either party, it should be asked at the time of filing briefs. Within the time allowed by the rule, but at the ensuing term of the court, the attorneys for the defendant in error filed in the clerk's office their answering brief on the motion for a new trial, and, neither party having asked an oral argument, the clerk carried the motion and briefs to the judge in chambers. A few days later the motion was overruled, exceptions allowed, and sixty days given the plaintiff in error in which to file a bill of exceptions, the judge stating at the time that, in his opinion, the exceptions and bill would be of no avail. The bill was prepared, signed, and filed within the time allowed, embracing amendments suggested by the attorneys for the defendant in error,

who, however, objected to the signing of the bill on the two grounds that the court was then without power to sign a bill, and that the time for taking a writ of error had passed. While it is well settled that a bill of exceptions can be signed only at the term of court at which the trial was had and judgment entered, or within an extension of time then granted (Brooder Co. v. Stahl, 42 C. C. A. 522, 102 Fed. 590), yet if by reason of a motion for a new trial or rehearing or to set aside the judgment, entered at the term, the power of the court over the judgment is retained, a bill of exceptions may be settled or time given for preparing it when the motion is overruled, whether at the same or a later term (Woods v. Linvall, 1 C. C. A. 34, 48 Fed. 73, 4 U. S. App. 45; Brockett v. Brockett, 2 How. 238, 11 L. Ed. 251; Railroad Co. v. Murphy, 111 U. S. 488, 4 Sup. Ct. 497, 28 L. Ed. 492; Smelting Co. v. Billings, 150 U. S. 31, 14 Sup. Ct. 4, 37 L. Ed. 986; Voorhees v. Manufacturing Co., 151 U. S. 135, 14 Sup. Ct. 295, 38 L. Ed. 101). "Until then the judgment or decree does not take final effect for the purpose of a writ of error" (Smelting Co. v. Billings); and until then there is no good reason for saying that the time for settling a bill of exceptions, the necessity for which could not be known sooner, had passed. This proposition is not affected by the fact that in the federal courts the ruling upon a motion for a new trial is discretionary, and not reviewable. It does result, however, from that fact that section 914 of the Revised Statutes of the United States does not require conformity to the state practice in respect to motions for new trial or bill of exceptions (In re Chateaugay Ore & Iron Co., 128 U. S. 544, 9 Sup. Ct. 150, 32 L. Ed. 508); and it is immaterial to inquire whether, under the practice in the state courts, the filing of the motion in the clerk's office without calling it to the attention of the court would have been of no effect. Whatever might otherwise have been the proper practice, the rule adopted by the lower court was intended to authorize the course pursued. The attorneys for the defendant in error filed their answering briefs without questioning that the motion had been regularly filed, and the court, without suggestion of a want of power, entertained the motion, and decided it on the merits.

Rule 93 having been read in evidence, the plaintiff in error offered to testify that during the two years of his employment as brakeman upon the road of the defendant it was not required of any brakeman by any superior officer at any time to be upon the top of cars at any time between stations when going up or down grade, and testimony to the same effect from two other witnesses was offered, but upon objection was ruled out, on the ground, stated at the time by the court, that, this plaintiff having admitted that he signed a contract in which he agreed that he would study and abide by the rules on the time card, that made "a contract between him and the defendant, and, although every other man on the railroad may have disregarded the rule, he was bound by his contract to observe it." This was erroneous. It was within the power of the company to waive any rule of its own adoption, whether the employés' duty to obey it arose from express contract, or by implication from the mere fact of employment and knowledge of the rule. The testimony offered tended to show such disregard of the rule by the brakemen and officers of the company as to

make the question of waiver one proper to be submitted to the jury. Railway Co. v. Baker, 63 U. S. App. 553, 33 C. C. A. 468, 91 Fed. 224.

The court, over objection, permitted the division superintendent of the defendant, in response to the question whether, if the practice of violating rule 93 were brought to his attention, he would permit it, to answer: "If a man persistently violated that rule, I would order his discharge, if I knew it." This was not a statement of fact pertinent to the issue, but rather a mere expression of opinion, which could be of no legitimate significance in the trial.

The important, and, indeed, the controlling, question in the case is that of contributory negligence. Error has not been assigned upon the charge given by the court to the jury, but three requests for special instructions, it is insisted, were improperly refused. We have not made such analysis of these requests as to be able to say that they should or should not have been given. The first and second conclude with a declaration that there had been no contributory negligence, when, perhaps, as in the third, the conclusion should have been left to the determination of the jury. Without passing definitely upon the point, we deem it proper, since the question must arise on another trial of the case, to say that we are unable to see just ground for attributing the injury suffered by the plaintiff in error to his own fault. If he was bound by the rules to be on top of the car, and outside of the cupola, which was above the roof of the car, it was not by any rule directly regulating his conduct, but by inference from the rules prescribing the duties of conductors. He was, by an explicit rule, "under the direction of the conductor at all times when on duty," upon a train. For brakemen this rule, for manifest reasons, had precedence of all others; and when, with the knowledge and acquiescence of the conductor, the plaintiff in error was in the cupola, just as his train approached or was starting up the grade, it is not to be said, as matter of law, that he was there in violation of duty. The conductor's authority to excuse him from remaining at the post of duty is expressly recognized in rule 132, and we cannot agree that nothing less than an express instruction or command of the conductor could justify his presence in the cupola. To say the most, it was a question for the jury. But even if he was wrongfully away from his post, how can it be said that he was thereby guilty of negligence contributing to the injury which he suffered? A collision, such as that which happened, was not likely to occur, and in respect to the dangers reasonably to be apprehended the cupola was a safer place than the top of the car. The requirement that brakemen should be on top of the cars was not for their own safety, but rather for the better discharge of their duties upon an emergency. If in Railroad Co. v. Mansberger, 12 C. C. A. 574, 65 Fed. 196, 24 U. S. App. 551, this court was right in saying that the position of the brakeman on a car, when by the rule then applicable he ought to have been on the ground, "was a mere condition of the injury," and "not the immediate cause of it, in a judicial sense," it is difficult to see how, in a more direct sense, the position of the plaintiff in error in this instance could have been the cause of the injury. For the errors pointed out the judgment is reversed, with direction to grant a new trial.