ANTONIO D'AGOSTINO, ADMINISTRATOR, &c., PLAINTIFF AND DEFENDANT IN ERROR, v. THE PENNSYLVANIA RAILROAD COMPANY, DEFENDANT AND PLAINTIFF IN ERROR.

Argued March 2, 1905—Decided June 12, 1905.

1. If a workman, who, in the discharge of his duty, has placed himself in a position of probable danger, where he has the right to expect a warning before the danger becomes actual, is injured because the warning was not given, the question whether he assumed the risk or was guilty of contributory negligence cannot be decided against him by the court.

2. The plaintiff's intestate was employed by the defendant to work on its railway tracks, over which trains were frequently run. It was a part of the system under which the men worked upon the tracks that the foreman should, upon the approach of a train on a certain track, call out: "Look out on track No. 3," or, "Look out on track No. 4," as the fact was, and for the men on such track to get out of the way until the train passed. The plaintiff's intestate was injured by an engine running over him because of the failure of the foreman to give this customary warning. *Held*, that the giving of warning was embraced in the duty owed by the defendant to the deceased, that the place where he worked should be kept safe; that the failure to perform this duty carefully was imputable to the defendant as employer, and that such failure was not one of the obvious dangers of which the deceased, as employe, assumed the risk.

On error to the Essex County Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices FORT, GARRETSON and PITNEY.

For the plaintiff in error, *Vredenburgh, Wall & Van Winkle.*

For the defendant in error, *Elvin W. Crane* and *Francis Child.*

The opinion of the court was delivered by

FORT, J.   The plaintiff's intestate was employed by the defendant as a track laborer.   On March 18th, 1902, he was working on the tracks of the company at Waverly.   There are several paralleling tracks at this point.   At the time he was killed the deceased was working upon track No. 5.   The gang of which the deceased was a member was working on tracks Nos. 3, 4 and 5.   Deceased was engaged in sorting loose stones from the earth on track No. 5, which was the drill track, and throwing the stones, when sorted, on track No. 4, which is the westbound passenger track.   While at work the deceased was necessarily bent over.   He could not, of course, devote his attention to his work and the approaching trains at the same time.   The proof in the cause shows that there was a foreman and an assistant foreman present, who did not actually engage in the work, but only acted as superintendents.   The proof was that the foremen of gangs of men at work, as the deceased and his fellow-laborers were at the time he was killed, were accustomed, upon the approach of a train, to call out to the men, "Look out on track No. 3 !" "Look out on track No. 4 !" or whatever track it happened to be upon which the train was approaching.   It is clear that the men relied upon this warning, and it is equally clear that it was the custom of the company to give it.   It is conceded that when the deceased was killed by the backing upon him of a freight engine on track No. 5 no such warning was given.   Both the foreman and his assistant were absent at the time.   They were at the "shanty,"

some distance away. It was testified by the foreman that it was the custom, when he left the men unprotected, owing to his going on some temporary duty, for him to warn them of his leaving and to caution them to look out for themselves; to call out to them, "Now, boys, look out." He says he did this on this day, but it appears by the proof that if he called at all he did not call so that all heard, and that the deceased was too far away to hear if he did so call.

On this state of facts we think that the deceased had a right to rely upon the fact that, if there was any danger from an approaching train the customary warning would be given. There was no error in the refusal to nonsuit or to direct a verdict for the defendants.

Where a workman in the discharge of his duty has placed himself in a position of probable danger, and where he has a right to expect a warning before the danger becomes actual, and he is injured because no warning was given, the question whether he assumed the risk or was guilty of contributory negligence cannot be decided by the court. *Albanese, Administrator,* v. *Central Railroad Co.,* 41 *Vroom* 241; *Harmer* v. *Reed Apartment Co.,* 39 *Id.* 332.

Under the proof this case cannot be distinguished on principle from that of the *Belleville Stone Co.* v. *Mooney,* 32 *Vroom* 253. In that case it was held, where the giving of a warning was embraced in the duty owed by the employer to the employe in order that the place where the employer sets the employe to work may be kept safe, that the failure of the foreman to discharge this duty carefully was imputable to the employer, and that such failure was not one of the obvious dangers of which the employe assumed the risk.

It was strongly contended in this case that the danger to the deceased of being run over was clearly an obvious one. On this point, in Belleville Stone Co. *v.* Mooney, Mr. Justice Dixon says: "Nor will the doctrine that servants assume the obvious risks of their employment save the defendant in this case, for that doctrine is not applicable to risks arising from negligence in the discharge of the master's duty to his servant. No doubt the plaintiff took the risks of the system under

which he knew the quarry was worked. He could not be heard to complain that places of refuge close at hand were not provided, or that other possible precautions which he saw were not in use were omitted. But he had a right to expect that the precautions which the defendant had provided for the security of the quarrymen should be carefully observed, and he did not assume the risk of a negligent observance."

No error is found in the record, and the judgment of the Essex Circuit Court is affirmed.