ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY. *v.* CARAWAY.

Opinion delivered January 6, 1906.

1. MASTER AND SERVANT—RULE ABROGATED BY CUSTOM.—A custom among the employees of a railroad company to violate a rule of the company, known to and acquiesced in by the company, will be held to abrogate the rule. (Page 409.)

2. SAME.—Where habitual violations of a rule applicable to the duties of brakemen are shown to have been known to the conductors, whose duty it was to enforce the rule and report infractions thereof to their superiors, a finding that the disregard of the rules was known to and acquiesced in by the railroad company will be sustained. (Page 410.)

3. SAME—WHEN MASTER CHARGED WITH NOTICE OF CUSTOM.—Where the habitual custom of employees to disregard a certain rule is shown to have been notorious, it may be inferred that the employer knew of such custom. (Page 411.)

4. DAMAGES—WHEN EXCESSIVE.—A verdict for $8,000 in favor of the wife and children of one negligently killed by a railroad company will not be supported by proof of an earning capacity of $75 per month, and that his habits and character were such that his care and moral training of his children were of some value, if the proof fails to show how much he contributed to the support of the wife and children, or to authorize a large amount of damages for the loss of his care and training. (Page 411.)

Appeal from Craighead Circuit Court; ALLEN HUGHES, Judge; affirmed.

*B. S. Johnson,* for appellant.

Plaintiff cannot recover for injuries received while working voluntarily, and in violation of the rules of the company, in a position not required by his duties. 3 Elliott, Railroads, § § 1303, 1313; 1 Labatt, Master and Servant, 843; 70 Ark. 606; 41 Ark. 547. Failure to obey the rules of the company will defeat a recovery by the injured employee, if the injury was the proximate result of his disobedience. 3 Elliott, Railroads, § 1282, and cases cited; 51 Ark. 467; 45 Ark. 318; 51 Miss. 641; 50 Wis. 66. The rule will be presumed to be reasonable. 33 Ohio St. 227; 31 Mich. 430; 67 Mo. 239; 55 Ark. 510; 139 U. S. 223. It is not proper to hold that a rule has been abrogated, unless there has been frequent and long-continued failure to obey it, and such failure is known to the company. 3 Elliott, Railroads, § 1282. The verdict on the second count of the complaint is excessive. 57 Ark. 321; *Ib.* 384. The act of April 25, 1901, is unconstitutional, citing, art 4, § § 1, 2, Const. 1874; 1 Cranch, 137; 1 U. S. Sup. Ct. Rep. 388-390; 1 Ark. 589; 2 Ark. 501; 14 Ark. 698; 5 Ark. 710; 6 Ark. 71; 14 Ark. 568; 16 Ark. 384; 24 Ark. 444; *Ib.* 91; 25 Ark. 489; 44 Ark. 280; 49 Ark. 492; *Ib.* 160; 58 Ark. 121; 69 Conn. 594; 11 Pa. St. 194; 36 L. R. A. 105; 84 Mass. 378.

*Lamb & Gautney,* for appellee.

The rule had been abrogated. 48 Ark. 333; 58 N. Y. 56; 24 S. W. 1053; 1 C. C. A. 625; 32 S. W. 799; 11 S. W. 308; 27 N. E. 1042; 56 N. W. 519; 73 Ind. 261; 65 N. W. 995; 62 N. W. 798; 8 So. 776; 42 S. E. 913; 33 S. W. 1050; 14 So. 209; 71 S. W. 560. The proximate cause of the injury was the negligent placing of the coal car by the switchmen, and the rule, even if in force, had no application. 33 So. 382; 43 S. E. 511; 27 S. W. 476; 9 So. 252; 23 S. W. 633; 44 Atl. 723; 24 Atl. 924.

The verdict, under the proof, was not excessive. 57 Ark. 307; 60 Ark. 550; 85 S. W. 68; 63 N. E. 1123; 116 Fed. 86; 77 Pac. 1058; 81 S. W. 991; 83 S. W. 34; 68 N. E. 1125; 73 S. W. 654; 82 N. Y. St. 1057; 71 Pac. 725. The act of April 25, 1901, is not unconstitutional. Citing art 7, § 4, Const. 1874; art. 6, § 2, Const. 1836; art 6, § 2, Const. 1861; art. 7, §

2, Const. 1864; art. 3, § 2, Const. U. S.; 98 U. S. 398; 7 Wallace, 506; 29 S. W. 465; 37 N. E. 879; 12 S. W. 304; 15 Ind. 246; 39 Ind. 501; 69 Ind. 458; 20 Cal. 196; 61 Cal. 605; 37 N. E. 879.

McCULLOCH, J.   This is an action brought by the administrator of the estate of H. A. Stephenson, deceased, against the St. Louis, Iron Mountain & Southern Railway Company to recover damages for the alleged negligent killing of said decedent by the train of defendant.   Damages were laid in the sum of $25,000, and the jury returned a verdict in favor of the plaintiff for $2,000 to the estate for pain and suffering endured by the decedent after he was struck by the train, and $8,000 for the benefit of the widow and child of decedent.

Stephenson was employed by the railway company as brakeman on a through freight train, his run being between Little Rock, Ark., and Popular Bluff, Mo.   As his train came into the terminal yards near Little Rock about midnight, he was struck by a coal car standing on a sidetrack, knocked to the ground, and run over by the cars of his train.   From the injuries sustained he suffered great pain, and died a few days thereafter.   The coal car had, by other employees of the defendant in the yards, been left so near the end of the sidetrack on which it stood that sufficient space did not intervene between it and cars passing on the adjoining track, and Stephenson was struck by it while he was on the side of a box car of his own train.   It is not contended that there was any error in the instructions or verdict as to the question of negligence of defendant's servants in leaving the coal car in the position named, or that the position of the coal car did not cause the injury complained of.   So those questions may be treated as settled.   It is only contended that Stephenson, in leaving his post of duty on top of his train and climbing down the side of the box car, was guilty of negligence which contributed to the injury, and that for that reason no recovery can be had.   No one saw Stephenson when he was struck.   He was the forward or head brakeman on the train, and one of the other brakemen on the train testified that he saw the swinging light from Stephenson's lantern just before he climbed down the side of the car.   Both of the other brakemen testified that they heard his groans as their end of the train passed the spot where he had fallen, that they found him lying on the ground, and that he told them the coal car had knocked him off

the side of the box car. They also testified that they saw the position of the coal car, and that it was close enough to strike a man on the side of a passing box car. There was no proof as to the purpose of Stephenson in climbing down the side of the car, except that it was the uniform custom of the brakemen, when they came into the yards at the end of the run, to get down from the train before it stopped, and wait for the caboose to come up, and then deposit their lanterns therein. The proof shows that the rules of the company required them to deposit their lanterns in the caboose before leaving the yards for their respective homes or stopping-places.

Appellant, to establish contributory negligence on the part of Stephenson, introduced in evidence and relied solely upon the following rule of the company, viz.:

"On freight trains having two brakemen it will be the duty of these men to ride on the top near the front and rear end of same, and the conductor in the center of the train approaching all meeting points, down or up grades, through stations and entering yards. On trains having three brakemen, the forward and rear brakemen will station themselves as above; the swing or middle brakeman will take a position near the middle of the train on top, in order to properly take signals from either end. The object of locating the trainmen as herein stated is in order to control the train when necessary or to assist in stopping or steadying the train when going down or up grade, and to change the brakes as frequently as is necessary to prevent heating wheels or sliding them flat. The use of a stick to set brakes is strictly prohibited. Conductors in charge of trains will instruct their men in regard to the above, and know that they occupy such positions. The conductor, being in charge of the train, will have authority to require brakemen to change positions with each other, when, in his opinion, it is necessary. On entering terminals, trainmen will remain in their assigned positions, and in charge of the train until the train has cleared the switches which they pull in on."

It is also shown that Stephenson knew of the existence of this rule when he accepted employment from the company, and it is claimed that he was guilty of contributory negligence in violating it.

It cannot be said to be negligence *per se* for a brakeman on

a freight train to climb down the side of a box car. His duties require him to do so frequently, and whether or not it is negligence to do so at a particular time or under given circumstances is a question of fact, for a jury to determine.

The doctrine is well-established that violation by the servant of rules promulgated by the master for the protection, under such circumstances as those attending the injury, of the class of employees to which he belonged is of itself contributory negligence, and should be so declared as a matter of law. 1 Labatt, Master and Servant, § 365; Dresser on Employers' Liability, § 109.

The rule in question was manifestly adopted, not for protection of the servants, but to measure the servant's duty to the master in the performance of his work. It states, in terms, that the object was to require the brakemen to be in position to handle the train. Whether the violation by the servant of such a rule made solely for the benefit of the master can be held to be negligence *per se* is another question altogether, and one which it is not necessary to decide in this case. The reason upon which the authorities base the doctrine of contributory negligence in violating rules seems to lead to the conclusion that it would not apply to such a rule as this. 1 Labatt, § 365 a, and cases cited; *L. R. & Ft. S. Ry.* v. *Eubanks,* 48 Ark. 460.

Be that as it may, there was proof tending to show that this rule, so far as it required trainmen on entering terminals to remain on top of the train until the switches were cleared, was uniformly, openly and habitually disregarded by the trainmen for a considerable period of time, to the extent that they got off the train and started back to the caboose or waited for it to come up before the train came to a stop.

The court submitted to the jury the question of the abrogation .of the rule in this respect, upon the following instruction, towit:

"7. You are instructed that while Stephenson was presumed to know the rule in evidence, and that it was his duty to obey the same so long as it was in force, if you find from the evidence that for a number of years this rule had been openly, continuously and habitually disregarded by the employees of defendant for such period and to such an extent as to lead to and justify the belief

that the rule had been abrogated by the company, or its non-observance acquiesced in, then the non-observance of the rule by Stephenson will not, of itself, bar a recovery, provided, that you find that the non-observance of the rule was for so long a period and of so frequent occurrence as to cause you to believe that the railway company must have known of and acquiesced in its non-observance; and in determining whether or not the rule had been abrogated, or its non-observance acquiesced in by the company, you may take into consideration the period of time, the extent to which and openness with which the rule had been violated by the employees of defendant, if you find from the evidence that the rule had been violated."

The court also gave the following at the request of the defendant:

"14. You are instructed that it would make no difference, if you find that the decedent knew the rule (or that the facts in evidence charged him with notice of it), that other employees frequently and customarily disregarded it. To make this reply avail as an excuse for non-observance by the deceased, you must find from the evidence that the defendant railway company knew of the practice of the employees in disregarding the rule and acquiesced in such practice in such a way as to sanction it, or as to be held practically to have abrogated it."

These instructions correctly stated the law with reference to abrogation of rules by continued disregard of them, acquiesced in by the employer, and there was evidence sufficient to sustain a finding by the jury that they had been abrogated. *L. R., M. R. & T. Ry. Co.* v. *Leverett,* 48 Ark. 333.

"A custom in violation of a rule, known and acquiesced in by the employer or his representatives, amounts to an abandonment of the rule, to the extent to which the custom infringes the rule. * * * In other words, evidence that the rule in question was habitually violated to the knowledge of the employer is admissible for the purpose of repelling the inference which would otherwise be drawn, as a matter of law, when the violation is proved." 1 Labatt, § 232; Dresser, p. 521; *Tullis* v. *Lake Erie & W. R. Co.,* 105 Fed. 554; *Fluhrer* v. *Lake Shore & Mich. So. Ry. Co.,* 121 Mich. 212.

But it is contended that there was no proof that the habitual

violations of this rule were known to the superior officers of the railroad company or those authorized to bind it by acquiescence in the disregard of the rules. The conductor was, by the rule itself, constituted the representative of the company for its enforcement. It was his duty to enforce the rule or report infractions thereof to his superiors, and, as to his subordinates, acquiescence by him in the violations of the rules was the act of the company. There is abundant proof that the conductors must have known of the habitual violation of this rule by brakemen, and the jury were warranted in so finding. *Cleveland, C. C. & St. L. Ry. Co.* v. *Baker,* 91 Fed. 224; *Tullis* v. *Lake Erie & W. Ry. Co., supra; Mason* v. *Railroad,* 111 N. C. 482; *Central Railroad* v. *Debray,* 71 Ga. 406; *Boatwright* v. *North Eastern Railroad Co.,* 25 S. C. 128.

Moreover, knowledge of the company may be inferred from the notoriety of the habitual custom of the employees in disregarding the rule. Lawson, Usages and Customs, § 21; *Fluhrer* v. *Lake Shore & Mich. So. Ry. Co., supra; Lowe* v. *Ry. Co.,* 89 Iowa, 420; *Cleveland, C. C. & St. L. Ry. Co.* v. *Baker, supra; Tullis* v. *Lake Erie & W. Ry. Co., supra; Barry* v. *Hannibal & St. J. Rd. Co.,* 98 Mo. 62; *McNee* v. *Coburn Trolley Track Co.,* 170 Mass. 283.

All the other issues were fairly submitted to the jury upon proper instructions, and we find no error in that respect. The evidence was abundant to establish the liability of appellant.

No complaint is made by the appellant as to the amount of the verdict of $2,000 assessed by the jury to cover the element of pain endured by the deceased, but it is contended that the verdict of $8,000 on the other branch of the case is excessive. The evidence establishes the earning capacity of deceased at about $75 per month, but it fails to show what amount he contributed to the support of his family. His widow, the only witness who testified upon the subject, was repeatedly asked on direct examination and cross-examination to state the amount of such contribution, but she could give little information on the subject. The only statement she gave concerning the amount of contributions sufficiently definite to rest an estimate of damages upon was that while they lived at Alicia, Arkansas, he paid the grocery bills, house rent and clothing for herself and child $18 per month. She testified, in

general terms, that he furnished a support for herself and child, but did not state the amount contributed. It is certain from the proof that he contributed more than $18 per month, but there is no means of ascertaining from the proof what amount he did contribute. The jury were not warranted in supplying the deficiency in the proof from their personal knowledge of the probable cost of supporting the family, especially where it fails to show even the style and circumstance in which they lived.

There was some proof tending to show that his habits and character were such that his care and moral training of his child were of some value, and, under the rule stated in *Railway Company* v. *Sweet,* 60 Ark. 550, the jury were warranted in assessing some amount of damage on that score, but the evidence here does not authorize a large amount.

Taking the proof in the record, we have no hesitancy in saying that the verdict is excessive. The liability of appellant being established by the verdict upon instruction free from error and evidence sufficient in support, it remains only for us to fix the minimum amount of recovery which we think the jury should have assessed under the evidence, and require appellee to remit the judgment down to the proper amount or suffer a new trial.

We think that the judgment is excessive to the extent of $3,000; and if appellee will within 15 days remit that amount, the judgment will be affirmed for the remainder; otherwise, it will be reversed, and the cause remanded for a new trial.