LORIENE FITZGERALD v. INTERNATIONAL FLAX TWINE COMPANY.[1]

May 1, 1908.

Nos. 15,447—(226).[2]

**Employment of Minor Without School Certificate.**

The employment of an infant under the age of sixteen years about dangerous machinery, the owner of which had not procured a certificate from the school superintendent or school board permitting such employment, as provided for in Laws 1907, c. 299, is illegal. If injury results to an employee who is within such age from a failure properly to guard dangerous machinery at which she was required to work, these facts make a prima facie case for damages against the employer. Perry v. Tozer, 90 Minn. 431, 97 N. W. 137, followed and applied.

**Duty of Master to Publish Rules.**

It is the duty of the master, for the protection especially of minors working about complicated and dangerous machinery, to make, publish, and enforce rules sufficiently clear and specific as to be capable of being intelligently understood and obeyed.

[1] Reported in 116 N. W. 475.          [2] October, 1907, term calendar.

**Question for Jury.**

Where such instructions have a vital bearing on the rights of litigants, and are the subject of dispute in testimony, their existence and import are for the jury.

**Questions for Jury.**

When the employee is at work in a dangerous or improper position which has no tendency in the ordinary course of nature and affairs to result in harm unless changed by the employer's act in putting a dangerous agency into motion, and when it is customary before so doing for the master to give warning so as to avoid injury, the questions whether the employer was actionably negligent in starting that agency into motion without the usual signal and whether the servant was guilty of contributory negligence are for the jury.

**Customary Signals.**

A servant, especially a minor, engrossed in work, has a right to rely on customary signals, and is not bound to anticipate negligence on the master's part in failing to give them.

**Contributory Negligence.**

There are two essential elements of contributory negligence, want of ordinary care and causal connection between the act and the injury complained of. When the act and the injury are not known, by common experience, to be actually and usually in sequence, and the injury does not, according to the ordinary course of events and affairs, follow from the act, then the act and the injury are not sufficiently connected to make the act the proximate cause of the injury.

**Verdict not Excessive.**

Plaintiff, a minor under sixteen years of age was engaged in splicing a broken strand of flax on a machine at rest. The jury found that the foreman started the machine in motion. There was evidence that the warning usual before starting it in motion was not given. Plaintiff's wrist was caught between a bed of revolving needles and a bar. The jury returned a verdict of $4,000. It is *held* that defendant's negligence and plaintiff's contributory negligence were questions for the jury, that the foreman was not the fellow servant of the plaintiff in starting the machine, and that the verdict was not so excessive as to justify reversal or amendment.

Action in the district court for Ramsey county to recover $15,000 damages for personal injuries. The case was tried before Brill, J., and a jury which returned a verdict in favor of plaintiff for $4,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

Plaintiff and respondent was employed by defendant and appellant to assist in the operation of spinning flax. In the room in which she was at work were sixteen machines of different designs and make. The machine upon which respondent was injured was thirty feet long, four feet eight inches high, five feet wide, and consisted of some eight sections connected in an iron frame or bed. In the rear of the machines there was a row of buckets about three feet in depth. In each was a strand of flax. Each strand passed from the bucket over a roller in the rear of the machine which was about four feet above the floor. From this roller it passed over a steel plate, known as the "sliver bar" or "plate," and between two steel guides or conductors about an inch or two apart just beyond the sliver bar or plate. From these guides the strands passed down between the guides and a revolving shaft immediately in front of them, then under this shaft, and up between it and another iron roller, known as the "retaining roller," then over this retaining roller and down between it and a revolving shaft immediately in front of it, and then in front of this revolving shaft to a bed of needles, known as the "gill bars." The operation of the needles carried the strands to the front end of the gill bars, where they passed over a "boss roller" and under a roller known as a "drawing roller" which pressed the flax down onto the boss roller. From this boss roller they passed to the spindle. This side of the machine was called the front side. On each side of the machine there was a rod about five feet two inches above the floor. It was admitted that the rod on the front of the machine would either stop or start the machine. The rod on the rear of the machine could certainly be used to stop the machine, and for present purposes it may be assumed that it could also be used to start the machine. The rollers over which the strands of flax passed after leaving the buckets or cans were so placed as to aid in keeping the operator from the machine. Between the rollers and the sliver bar, and some inches forward from the rollers, was a steel guard or shield which came down toward the floor a distance of twelve or fourteen inches below the level of the sliver bar. This shut out entirely the working machinery from the operator at the back of the machine. The operation of all parts of the machine was essential to proper spinning. The flax could not be spun into twine by running it directly from

the cans up over the rollers and down under the guard or shield and the sliver bar onto the needles.

At the time of the accident the plaintiff was working at the back of one of the machines. It became necessary to adjust the tension part of the front of the machine. The attention of the foreman of the room was called to it. He came over, stopped the machine at which plaintiff was hurt, and made the adjustment. This took some time. Plaintiff went to the rear of the machine, and saw one of the strands of flax break. While she was attempting to make the splice, the machine was started into motion. Plaintiff's hand was caught between the needles and the bar and injured.

The testimony concerning instructions as to the method and place of splicing parted strands of flax was inconsistent and contradictory. Plaintiff's testimony tended to show that she was splicing the broken strands in the same manner and at the same place as she had seen many other girls do. She testified at one time that both her hands were on top of the machine; at another time that she had her left hand down under the machine; and, finally, that she did not know where she had her hands. The construction of the machine, the location of her injury, and considerable direct testimony tend to show that she must have had her left hand down back of the shield and under the bar and her right hand on top of the machine. Defendant's witness, one Hipple, gave instructions, in part personally, and in part by directing another employee to teach plaintiff. He testified that it was his rule to tell all the girls entering the employment never to get underneath the machine while in motion or stopped. It did not, however, appear clearly that he had an independent recollection of having so instructed this plaintiff individually. Annie Smith, a witness for defendant, testified: He (Hipple) told me to teach her (plaintiff) when she was there with me. He told me to teach her how to run the machine in the back-feed. That was all he said to me. He (Hipple) and plaintiff stood there talking awhile. I did not hear what they said. In explaining the method of operation she testified: The girl behind, if she can get it, will splice it before the broken end reaches the roller. But if the broken end reaches the roller, then the girl behind stops the machine. That is the way I taught her to do. "How would it be spliced or

fixed after she had stopped the machine? A. The girl in front will take the roller up and fix it in under and put it on the needles and fix it in front." * * * Then the girl in front would get up and make the splice here * * * and put it under the machine. "Q. How would she get it under this roller? A. She would put it with her hand under. Q. This girl in front? A. Yes, sir * * * she would lift that up, she would put in under there, then over that one you have got in your hand under the roller and over the needles." Counsel for defendant then got on top of the machine and adjusted the flax and rollers. "Q. That is the way you had to do it, was it? A. Yes, sir.". Even the inference from the direct testimony of the witness which the jury might have drawn from the testimony was that somewhere about the middle of the machine was the end of the back girl's jurisdiction. On cross-examination, however, she testified: In making the connection from the back up here they (apparently the girl in the rear) were supposed to make the connection. If the machine stopped, and the end extended out here, and they could reach it, they were supposed to take and connect it. * * * If they could reach this fiber here anywhere in the back with the end out, you had the machine stopped, and they were supposed to go and connect it? Yes, sir. And if they didn't, and if the end passed out and went through the roller and out onto the needles, that the girl would have to go up in front of the machine and get busy with the knife and put that down. That is the way I understood they should be instructed. And that is the way I did instruct Loriene Fitzgerald with the rest of them.

The machine used and exhibited, with reference to which this testimony must be applied, was not the one by which plaintiff had been injured. This was not defendant's fault. The original had been sold and taken to Chicago. The two machines were not identical. According to defendant's witnesses, the original machine was two inches wider, and the distance between the retaining roller and the boss roller was four inches greater, than in the one exhibited. The clearance between the pins and the roller varied in the different machines from one-eighth to five-eighths of an inch. Plaintiff repeatedly testified that on the original machine there was a considerable open space near the middle roller which did not appear in the one exhibited.

The trial court charged concerning the employment of plaintiff, a minor under the age of sixteen years, as will be hereinafter set forth. It also submitted to the jury two questions of defendant's negligence. "It is claimed that the plaintiff was of tender years and inexperienced, that the machinery was dangerous, and that she was not sufficiently instructed in regard to the use of the machine for the protection of herself from danger; and it is claimed upon her part that the defendant failed in its duty in this regard. And the second ground claimed is that the machine was started by the foreman of the defendant when the plaintiff was in a position of danger, and that that was a negligent act." In connection with the second charge, the court also submitted the question whether it was the custom, when the machine was stopped, not to start it again without giving warning to the operator at the rear of the machine. He also charged that, if the plaintiff was sixteen years of age or under, then the happening of the accident, in connection with that fact, would be prima facie evidence of negligence on the part of the defendant. Plaintiff brought this action to recover for the injuries.

The jury returned a verdict for $4,000 and the following special verdicts:

"(1) Q. Did the plaintiff put her hand under the back of the guard or shield while the machine was in motion? . A. No.

"(2) Q. Did the foreman, Struck, start the machine at the time plaintiff received her injury? A. Yes.

"(3) Q. Was the plaintiff, Loriene Fitzgerald, sixteen years of age at the time she was injured? A. No."

This appeal was taken from the order of the court denying the defendant's alternative motion for judgment notwithstanding the verdict or for a new trial.

*Durment & Moore* and *D. A. Orebaugh,* for appellant.

*James R. Hickey,* for respondent.


JAGGARD, J. (after stating the facts as above).

The facts, which have been stated at some length, may, for present purposes (see Strutzel v. St. Paul City Ry. Co., 47 Minn. 543, 50 N. W. 690), be thus summarized: Plaintiff was at work on a large flax ma-

chine. Extending along its front and along its rear were rods by which it was started and stopped. The back of the machine was protected by a shield. The flax passed over guides, through one set of rollers, then over a plate to the middle set of rollers, then through and under them to a revolving bed of needles, and thence through other rollers out of the front of the machine to a tension machine. The strands of flax frequently broke. It was then the duty of the girls at work in the front or in the back of the machines to splice the separated ends. The testimony is not clear as to the exact boundary line on the machine at which the duty of the girl at the back ended and that of the girl in front began. In a general way it appeared that each worked over her respective ends toward the middle roller. Shortly before plaintiff was hurt, the superintendent's attention was called to a derangement of the tension device. He stopped the machine and began the adjustment of the tension device. Plaintiff went back to the rear of the machine on which she was hurt to splice a parting strand of flax near the middle roller. While she was so engaged, the machine was started in motion without warning. The jury found specially that the foreman started the machine. While the preponderance of evidence on this point may have agreed with defendant's contention that the foreman did not start it, there was sufficient evidence to sustain the jury's special verdict. We are of opinion, also, that there was sufficient evidence to justify the finding of the jury that it had been customary for the protection of employees to give warning before the machine was started into motion. Plaintiff's left hand was caught between the needles and the bar and injured.

1. The first question presented by the assignments of error is whether a case of prima facie negligence on the part of the defendant was made out by proof that plaintiff was, at the time of her employment, under sixteen years of age. This controversy is determined for the plaintiff by Perry v. Tozer, 90 Minn. 431, 97 N. W. 137, 101 Am. St. 416. There, as here, the court charged that the employment of a servant under the age of sixteen years was in violation of the statute, and injury from machinery which she was attending at the time made a prima facie case of negligence against defendant, so that if the plaintiff had rested upon this proof, and no evidence had been introduced to

contradict it, he would have been entitled to recover. That charge was sustained. And see Rolin v. Tobacco, 141 N. C. 300, 53 S. E. 891, 7 L. R. A. (N. S.) 335; Sterling v. Union, 142 Mich. 284, 105 N. W. 755.

Defendant makes this point in this connection: "Section 1809, R. L. 1905, as construed by the supreme court of Minnesota, is in contravention of the fourteenth amendment to the constitution of the United States, in that it deprives the defendant of liberty and of its property without due process of law and denies to it the equal protection of the laws." We think it quite obvious that the point is not well taken, and refer to it only to preserve defendant's record. Defendant also assigns as error the permission by the trial court to the plaintiff to amend his complaint by inserting an allegation under which the court received evidence and a certificate as to the duration of the school year. We think no abuse of the discretion of the trial court appeared. The argument as to the impropriety of the certificate, in view of the conclusion reached in the Tozer case, and herein, fails also.

2. The chief contention of defendant on the merits is that plaintiff was engaged in doing her work at a place, and with her hand under the machine, contrary to defendant's instructions; that defendant could not properly be held to have been negligent either in giving instructions or in failing to anticipate the peril which resulted from her violation of the rules; and that these facts show contributory negligence on plaintiff's part, as a matter of law. It would be, perhaps, injustice to hold as a matter of law that plaintiff was injured while she had her left hand back of and under the shield, and that the special verdict of the jury to that effect was not justified by the evidence. See Joyce v. American, 184 Mass. 230, 68 N. E. 213. The testimony to the contrary, however, is weak and inconsistent. The very nature of her injury, considered in connection with the construction of the machine, is strong and convincing. We have therefore been led to assume that she was injured while in such a position as the defendant claims. On this assumption we are none the less of the opinion that the appeal presents no reversible error in this regard in view of two pertinent rules of law.

104-M.—10

In the first place, it is clear, beyond controversy, that it is the duty of the master to establish for the protection, especially of minor servants engaged in dangerous work, as about complicated machinery, adequate regulations, to properly call such rules to their attention, and in some cases to duly instruct them therein. Those instructions must be sufficiently clear, plain, and specific to be intelligently observed. Lovely, J., in Small v. Brainerd Lumber Co., 95 Minn. 95, 103 N. W. 726. When such instructions, having a vital bearing on the right of litigants, are oral, and are the subject of dispute in testimony, their existence and import are for the jury. Seaboard Air Line Ry. v. Shanklin, 148 Fed. 342, 78 C. C. A. 334. It is also a duty of the master to enforce such regulations. Their mere violation by an employee without the master's acquiescence does not relieve the particular employee from the requirement of abiding by them. Sloan v. Georgia, 86 Ga. 15, 12 S. E. 179. Such violations may, however, be so habitual as to amount to their renunciation or waiver. St. Louis v. Caraway, 77 Ark. 405, 91 S. W. 749; Tullis v. Lake Erie & W. R. Co., 105 Fed. 554, 44 C. C. A. 597; Sprague v. Wisconsin Central R. Co., supra, p. 57, 115 N. W. 104. An employee is not bound by a rule of his master which has not been properly published and brought to his attention and which he has habitually neglected to enforce. Vanderburgh, J., in Fay v. Minneapolis & St. L. Ry. Co., 30 Minn. 231, 15 N. W. 241. Cf. Mackey v. Baltimore & P. R. Co., 8 Mackey (D. C.) 282.

In the case at bar, one Hipple was in the habit of instructing the employees, but he had no independent recollection of the particular oral instructions which he had given to this plaintiff in the noisy shop. At best they were not clear, plain, nor specific. He directed another girl to teach her. She was also to learn from observation. There was testimony that plaintiff, at the time of her injury, was doing her work as she had repeatedly seen other servants do the same work. The testimony of the girl instructor was as reasonably susceptible of a construction denying as of one affirming defendant's view of the instructions. At all events, those instructions must be interpreted with reference to the use by the witnesses of the words "here" and "there" and with reference to the difference between the machine which was used as an exhibit and the one on which she was actually injured. It would

be highly unreasonable to predicate prejudicial error in the submission to the jury of the matter of the giving of instructions. The particular formula on this subject used by the trial court in its final form was, we think, proper. The general verdict therefore was justifiable because the jury may have found that defendant was guilty of a breach of duty to the defendant to make, publish, and enforce proper rules.

In the second place, when an employee is at work in a dangerous and improper position, which has no tendency in the ordinary course of nature and of affairs to result in harm, unless changed by the employer's act in putting a dangerous agency into motion, and when it is customary, before so doing, for the master to give warning so as to avoid injury, the questions whether the employer was actionably negligent in starting that agency into motion without the usual signal and whether the servant was guilty of contributory negligence are for the jury.

One reason for this rule is that the servant, especially a minor engrossed in work, has a right to rely on customary signals and is not bound to anticipate negligence on the master's part in failing to give them. 6 Current Law, 572, 584. In D'Agostino v. Pennsylvania, 72 N. J. L. 358, 60 Atl. 1113, it was said: "If a workman, who, in the discharge of his duty, has placed himself in a position of probable danger where he has the right to expect a warning before the danger becomes actual, is injured because the warning was not given, the question whether he assumed the risk or was guilty of contributory negligence cannot be decided against him by the court." In Anderson v. Northern Mill Co., 42 Minn. 424, 44 N. W. 315, plaintiff was engaged in removing sawed lumber. This brought him on a part of a platform, frequently made dangerous by heavy timbers which came down upon it, from the saw above, with great velocity and at irregular intervals. Defendant had adopted and practiced the custom of warning the men upon the platform of the coming of these timbers by a signal. It was held that it was negligent for the defendant to omit the customary cautionary signal, and that it was not negligence for the plaintiff, engrossed as he was in his work, to rely wholly upon the signal being given. And see Perras v. A. Booth & Co., 82 Minn. 191, 195, 84 N. W. 739, 85 N. W. 179; Rahman v. Minnesota & N. W. R. Co., 43 Minn. 42, 44, 44 N. W. 522; Erickson v. St. Paul & D. R. Co., 41 Minn. 500, 43 N. W.

332, 5 L. R. A. 786; Barber v. Cincinnati (Ky.) 21 S. W. 340; Wills v. Cape Girardeau, 44 Mo. App. 51; Moore v. Wabash, 85 Mo. 588; International v. Wray (Tex. Civ. App.) 96 S. W. 75; Nichols v. Chicago, 69 Iowa, 154, 28 N. W. 571; Pringle v. Chicago, 64 Iowa, 613, 21 N. W. 108; Bird v. Leather, 143 N. C. 283, 55 S. E. 727.

The second reason for this rule is that it was at least a question of fact for the jury whether plaintiff's improper position was under the circumstances of this case a proximate cause of the wrong of which she complains. Many cases on this point can be found collected in 8 Am. & Eng. Ann. Cases, 19–21. Only the primitive law failed to distinguish between a cause and a condition. In 2 Pollock & Maitland Hist. Com. Law, 468, it was pointed out: "Guesswork perhaps would have taught us that barbarians will not trace the chain of causation beyond its nearest link; that, for example, they will not impute one man's death to another unless that other has struck a blow which laid a corpse at his feet. All the evidence, however, points the other way: I have slain a man if but for some act of mine he might perhaps be yet alive. Very instructive is a formula which was still in use in the England of the thirteenth century: One who was accused of homicide and was going to battle was expected to swear that he had done nothing whereby the dead man was 'further from life and nearer to death.' Damages which the modern English lawyer would assuredly describe as 'too remote' were not too remote for the author of the Leges Henrici. At your request I accompany you when you are about your own affairs; my enemies fall upon me and kill me; you must pay for my death. You take me to see a wild beast show or that interesting spectacle, a madman; beast or madman kills me; you must pay. * * * In none of these cases can you honestly swear that you did nothing that helped to bring about death or wound."

Judicial opinion has generally rejected alike this primitive rule and the confusing, and often confused, disputations of the metaphysicians. The serious thought of logicians has not been rejected or abandoned lightly or superciliously. It has proved too indefinite and impracticable for actual use. See, for example, 1 Wundt, Logik, 525, et seq.; Syst. Phil. 292, et seq. John Stuart Mill has rendered more service, perhaps, than any other scholastic, yet the summary of his contribution has been the addition of a few descriptive adjectives and phrases. In law, as in

logic (1 Sigwart, Log. 568) "his attempt may be regarded as a failure." Courts have, however, clearly recognized a distinction between a necessary antecedent and a responsible cause, and between the person without whose conduct the wrong could not have occurred and the last human wrongdoer. The proximate cause must have a natural tendency to produce, in the ordinary course of nature and of affairs, the result complained of. "There are two essential elements in contributory negligence, a want of ordinary care, and a causal connection between the act and the injury complained of. * * * When the act and the injury are not known by common experience to be naturally and usually in sequence, and the injury does not, according to the ordinary course of events, follow from the act, then the act and the injury are not sufficiently connected to make the act the proximate cause of the injury. Cooley on Torts (2d Ed.) 73; Beach on Cont. Neg. 32." Shelby, J., in Kansas City Southern Ry. Co. v. Prunty, 133 Fed. 20, 21, 66 C. C. A. 163.

This general view is denied in effect by many authorities, in so many terms by practically none. It is sustained, however, by the clear preponderance of current legal thought. There is an undeniable distinction between the danger from the performance of work of a servant in an unusual and improper manner and "increased danger * * * not by some peril attendant upon the manner of doing the work, but by a danger arising from a failure of the railroad company to use reasonable care to discharge a duty incumbent by law upon it." Peoria v. Puckett, 42 Ill. App. 642. "Contributory negligence is no more than a case of negligence not dependent on any different rule of law, though presupposing the limitation of the issue of negligence to an inquiry as to which of two persons its final (and wrongful) impulsion is to be attributed." 1 Beven, Neg. 176. "No one can justly complain of another's negligence, which, but for his own wrongful interposition, would be harmless. Parker v. Adams, 12 Metc. 415." Carpenter, J., in Nashua v. Worcester, 62 N. H. 159, at page 163. "The antecedent wrongdoer is relieved of the onerous and superfluous burden." Mr. Bohlen, in 21 Harvard Law Rev. 227, 238. Thus, "where the proximate cause of plaintiff's injury was the negligence of his foreman in giving a signal to start a train after plaintiff had gone in between certain cars and plaintiff's position at the time was known to the fore-

man, the fact that plaintiff violated a rule of defendant company in going between the cars was a mere intervening cause and was insufficient to prevent recovery." Alabama v. Bonner (Ala.) 39 South. 619. And see O'Brien, J., in Rider v. Syracuse, 171 N. Y. 139, 147, 63 N. E. 836, 58 L. R. A. 125; Anderson v. Southern, 70 S. C. 490, 50 S. E. 202; Reiter-Connolly v. Hamlin, 144 Ala. 192, 40 South. 280; Baggneski v. Lyman Mills, 193 Mass. 103, 78 N. E. 852; Rolin v. Tobacco, 141 N. C. 300, 53 S. E. 891, 7 L. R. A. (N. S.) 335; Helfenstein v. Medart, 136 Mo. 595, 36 S. W. 863, 37 S. W. 829, 38 S. W. 294; Styles v. Receivers, 118 N. C. 1084, at page 1088, 24 S. E. 740, at page 742; Phillips v. Chicago, 64 Wis. 475, 25 N. W. 544; Terre Haute & I. R. Co. v. Mansberger, 65 Fed. 196, 12 C. C. A. 574.

It remains to apply to the facts in this case this principle of law thus resting on these two reasons: on the assumption that the plaintiff had her left hand under the machine and back of the shield, and that this was forbidden and improper. Plaintiff assumed this position in the master's interest and in the performance of the work which it was her duty to perform. In that position she could have worked with absolute safety. It had become a part of the recognized method of work that warning should be given before the machine was started into operation. Moreover, a mere glance by the foreman would have shown her peril because her right hand, at least, was in plain sight on top of the machine. Engrossed as she was in work, she had a right to rely upon the performance by the master of his duty to give the usual signal. She was not bound to anticipate negligence on his part in this regard. If she had not been in the conceded position, it may be admitted that her injury could not have occurred. That position had, however, no natural tendency in the ordinary course of nature or of the operations of the factory to produce harm. If it had not been for the subsequent negligence of the master in starting the machine without warning the accident would not have occurred. It follows that the court was not in error in refusing to hold as a matter of law that plaintiff was guilty of contributory negligence which was the proximate cause of the harm of which she complains. Moreover, the rule is clear that a servant under the age of sixteen is required to exercise the amount of discretion which a person of his age and experience should exercise, and no more, and that is ordinarily a question for the jury.

Barg v. Bousfield, 65 Minn. 355, 68 N. W. 45. And see Kaillen v. N. W. Bedding Co., 46 Minn. 187, 189, 48 N. W. 779; Sterling v. Union, 142 Mich. 284, 105 N. W. 755.

3. Defendant insists that the act of the foreman in starting the machine was the mere incident of the work and the negligence of a fellow servant, and therefore assumed. There is no merit in this contention. The duty of giving warning was an absolute duty of the master which he could not delegate. The charge properly assumed that, if the jury found the facts submitted to it, then as a matter of law the foreman was a vice principal. Perras v. A. Booth & Co., 82 Minn. 191, 84 N. W. 739, 85 N. W. 179; Carlson v. N. W. Tel. Exch. Co., 63 Minn. 428, 65 N. W. 914; Renlund v. Commodore Mining Co., 89 Minn. 41, 93 N. W. 1057, 99 Am. St. 534; Dizonno v. G. N. Ry. Co., 103 Minn. 120, 114 N. W. 736; Reiter-Connolly v. Hamlin, 144 Ala. 192, 40 South. 280; Comrade v. Atlas, 44 Wash. 470, 87 Pac. 517; 6 Current Law, 558.

4. Defendant also insists that the damages were excessive. The wound on the back of the hand near the juncture of the carpal and metacarpal bones caused the tissues of the hand to atrophy in such a way as to interfere with the use of the tendons attached to the top of the middle joints of the three fingers between the thumb and little finger. As the result of the wound there was a permanent disfigurement and deformity, the bones had been broken, and the injured hand had shrunken up. It was in a "condition of progressive atrophy with a tendency to shrivel up the hand." No known operation would relieve her. The verdict seems large. The trial court, which alone was in a position to properly determine the question, sustained it. We feel constrained, within the familiar rule on the subject, to affirm his conclusion in this regard.

Other assignments of error not herein specifically referred to have been considered and have not been found sufficient to justify the change of the conclusion here reached.

Affirmed.

ELLIOTT, J.

I dissent.