CLEVELAND, C., C. & ST. L. RY. CO. v. BAKER.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1899.)

No. 520.

1. MASTER AND SERVANT—ACTION FOR PERSONAL INJURIES—PLEADING.
   A declaration in an action to recover for injuries received by a brakeman while uncoupling cars is not insufficient after verdict, as showing contributory negligence, merely because it shows the cars to have been in motion, without setting out facts making it necessary to so make the uncoupling, where the speed is not stated, and it is alleged that it was plaintiff's duty to uncouple the cars while they were being propelled over the line of road, and that he was in the exercise of due care for his own safety.

**2. SAME—EVIDENCE—WAIVER OF RULES BY COMPANY.**

A plaintiff injured while uncoupling cars in motion, in violation of a rule of the company of which he had knowledge, may show that such rule was habitually disregarded, with the knowledge of those whose duty it was to report violations thereof to their superiors; it being a question for the jury whether the rule had been waived by the company, or whether there was any attempt to enforce it in good faith.

**3. SAME—INSTRUCTIONS.**

The fact that there was evidence tending to show that such rule had become a nullity, by reason of the acquiescence of the defendant in its violation, did not justify the refusal of an instruction that if the rule was in force, and plaintiff violated it voluntarily, and in consequence was injured, he could not recover, such instruction being correct, and applicable to one theory of the evidence.

**4. SAME—CONTRIBUTORY NEGLIGENCE — ACT OF CONGRESS RELATING TO RAILROADS.**

In the act of congress of March 2, 1893 (27 Stat. 531), requiring railroad companies to equip all freight cars used in interstate commerce with hand holds, or grab irons, the provision that any employé who may be injured by reason of a failure to provide such equipment "shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such * * * car had been brought to his knowledge," applies only to risks generally incident to the absence of such equipment, and does not excuse a brakeman from a failure to use ordinary prudence in a particular case, where he observes the absence of such appliances; and, if he was guilty of contributory negligence under the circumstances, he is not relieved from its effect by the statute.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

John T. Dye, for plaintiff in error.

S. Z. Landes, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge.    This is an action of trespass on the case for personal injuries suffered by August Baker, the defendant in error, while in the employment of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, the plaintiff in error, as a brakeman.    The facts, in brief, as alleged in the declaration, are that on the 13th day of August, 1896, at Eldorado, Ill., while the plaintiff, as it became his duty to do, was attempting to uncouple two moving cars, a brake beam of the car behind him was pushed upon the heel of his right foot, with which he was stepping forward to keep pace with the cars, and the foot and leg were so crushed that amputation at the knee became necessary.    In two of the five counts of the declaration it is alleged that the railway company, in disregard of its duty to keep its freight cars in good repair, and to have the brake beams thereon so adjusted as to be at all times at least 12 inches above the roadbed, or, as alleged in one count, seven inches above the rails, had negligently permitted the brake beam by which the plaintiff's foot was caught to hang within three inches of the roadbed, and that the plaintiff was ignorant of the defect, and was exercising due care for his own safety.    In the other counts there is no averment that the brake beam was out of repair or misadjusted, but the substance of the charge is that the injury was caused by the failure of the company to equip its cars used in inter-

91 F.—15

state commerce with grab irons, or hand holds, as required by the act of congress of March 2, 1893 (27 Stat. 531). Section 4 of the act declares it "unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab irons or hand holds in the ends and sides of each car for greater security to men in coupling and uncoupling cars." The eighth section, transposed to make its meaning more clear, provides that an employé injured by a car not properly equipped, "although continuing in the employment of such carrier after the unlawful use of such locomotive, car or train had been brought to his knowledge," "shall not be deemed thereby to have assumed the risk thereby occasioned." The entire section reads as follows: "That any employé of any such common carrier who may be injured by any locomotive, car, or train in use contrary to the provision of this act shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car, or train had been brought to his knowledge." Issue was joined by a plea of not guilty. Exceptions were saved, and error has been assigned upon the admission of testimony, and upon instructions given and refused. There was also a motion in arrest of judgment.

The motion in arrest might be disregarded, because not mentioned in the original brief for the plaintiff in error. In a supplemental brief it is urged that it ought to have been sustained, because the declaration shows contributory negligence on the part of the defendant in error, it being alleged in each count that the cars to be uncoupled were in motion, and no reason shown or necessity alleged for incurring the manifest danger involved in the attempt to uncouple cars in motion. The rate of motion is not alleged. It may have been very slow,—not more than seemed to be necessary to make the uncoupling possible. It is alleged that it was the plaintiff's "duty to uncouple the cars while they were being propelled over the line of road," and that he was "in the exercise of due care for his own safety," and the mere fact that the cars were in motion does not compel or justify the legal conclusion that he was at the same time acting negligently, or voluntarily assuming the risk incurred.

The plaintiff admitted knowledge of a rule of the company which, in effect, forbade the coupling or uncoupling of cars while in motion, but, for the purpose of showing that the rule had been waived by the company, introduced, over objection and exception by the plaintiff in error, the testimony of a number of brakemen of the company to the effect that the witnesses were accustomed to couple and uncouple cars in motion, that other brakemen did so, and that half or more of the couplings and uncouplings on the road were made in that way. It was certainly competent to show that the company had waived the rule, or consented that it be disregarded. The fact of frequent violation of a rule by employés, it is true, may not justify an inference of the company's consent; but testimony is not incompetent which in itself or in connection with other evidence shows, or reasonably tends to show, violations so frequent and long maintained as to constitute a custom of which the general officers of the company may fairly be presumed to have had knowledge. In this

case other rules of the company, besides that in question, were put in evidence, which required conductors, engineers, inspectors, and yard-masters to report to their superiors any infractions of rules which should come to their knowledge.   If they were not thereby made vice principals, so that their knowledge of an infraction should be deemed to be the knowledge of the company, it is not to be presumed that they all neglected the duty imposed upon them of making report to their superiors; and it being clear that brakemen could not couple or uncouple cars in motion without the knowledge of an engineer or con-ductor, nor do it habitually without the knowledge of yardmasters or inspectors, it was, to say the least, a question for the jury whether the plaintiff in error knew of and consented to the habitual disregard of the rule on that subject.   It is urged that the rule was for the benefit of the brakemen, and could not be waived by the company. Against this it is asserted that the rule was not intended to put an end to the coupling and uncoupling of cars in motion, but was designed to shield the company from liability to brakemen who should get hurt by making couplings in that way,—a practice which, it is said, must be indulged if trains are moved on schedule time; and the brakeman who should refuse to follow the custom, it is also said, would be dis-missed from the service.   The question, it is evident, is one of fact, and not of law merely.   A railroad company, however, need not be exposed to the charge of devising rules on the pretense of protecting its em-ployés with the real design of protecting itself, to their injury.   Proper steps to obtain knowledge of infractions, followed by prompt punish-ment of every offender, by discharge or suspension or other appropriate penalty, will make such an imputation impossible.   Such a course steadily adhered to will leave the employé no room to doubt that the rules laid down for him were enacted in good faith, and are to be obeyed, even though a train be delayed, and his arrival at the end of his run, with all that that implies, be postponed.

The court refused the following special request for instruction:

"If you believe from the weight of the evidence that at the time of the ac-cident there was a rule of the defendant company known to the plaintiff, for-bidding the employés of the company from going between cars in motion to un-couple them, and that plaintiff voluntarily violated this rule, and, in conse-quence thereof, was injured, he cannot recover for such injury from the de-fendant company."

The court's own charge containing nothing to supply the place of it, the refusal of this request was plain error.   That the rule referred to had been adopted, and that the defendant in error had knowledge of it before he was hurt, is shown by his own testimony; and the plaintiff in error was entitled to the benefit of the well-established rule of law that an injury received by an employé in the act and by reason of a voluntary or intentional violation of a rule laid down for his conduct in the line of his employment, though attributable also to the master's negligence, affords no ground for an action against the latter.   And it is no objection to the request that it contains nothing explicit upon the question whether the rule had been waived or had ceased to be in force by reason of the company's acquiescence in oft-repeated and long-continued disregard of it by the brakemen of the

company. On that question the charge was also silent, though it ought to have spoken. The proposition requested was a proper one, proceeding, as it did, on the supposition that the rule was in force, and had been violated; and it should not have been refused, because there was evidence on which the jury might have found that the rule referred to had become a nullity. A request for instruction which is relevant and correct on the theory upon which it is drawn is not objectionable because the evidence in the case admits of or tends to prove another theory, on which it would be irrelevant or incorrect.

The eighth and ninth special requests, also refused, were to the effect that if the plaintiff, by the use of ordinary care, could have discovered the absence of grab irons, or hand holds, on the cars he was uncoupling, before he attempted to uncouple them, and reasonable care for his own safety would have forbidden his going between the cars in that condition, and he went between them, and was injured because of the absence of grab irons, or hand holds, their absence was not a ground for recovery. These requests are perhaps objectionable on their face, because they assume that the defendant in error knew of the utility of grab irons, and that they were required by law. The court instructed properly in respect to his duty to see for himself that the brake beam was in order. But, if that was hanging too low, the fact was patent, and its significance probably well known to a brakeman of ordinary intelligence and experience. There is a manifest difference between detecting a defect in a present appliance and observing the total absence of something unheard of or unknown. It seems that the defendant in error admitted having observed that there were no grab irons on the forward car, and the jury might have inferred that he knew their advantages for the purpose intended by congress; nevertheless, the instruction should have been so framed as to leave to the jury to determine whether that was the fact. Other special requests are obnoxious to the same criticism. But passing that objection, and proceeding on the assumption that the defendant in error was acquainted with such irons and their uses, did ordinary prudence require him, when he observed that the foremost of the cars which he was about to uncouple was not equipped therewith, to refrain from going between the cars while in motion, or at least to take extra precautions against danger, or was he permitted, under the act of congress, to act as if the irons were there? We are of opinion that this question is substantially the same as if the railroad companies voluntarily and without legislative requirement had been accustomed to use grab irons, and cars without them were known to be defective, and correspondingly more dangerous to one attempting to couple or uncouple them. The meaning of the act is that, by remaining in his employment, the servant does not assume the risks generally incident to the absence of such irons, but not that in a particular case of voluntary action, with full knowledge of the situation, the character of the act is not to be determined according to all the facts and circumstances. The known absence of the grab irons was a circumstance in this case which the jury should have been directed to consider in determining whether the defendant in error was guilty of contributory negligence, or intended to assume the risk of the attempt

to uncouple. A contrary construction of the act would permit a brakeman to take the risk of coupling or uncoupling cars not supplied with hand holds under circumstances of extreme and well-understood danger, with the conscious purpose of holding the company responsible for the result. The judgment is reversed, with direction to grant a new trial.

SHOWALTER, Circuit Judge, did not participate in this decision.