LOUISVILLE & N. R. CO. v. WOODWARD.†

(Circuit Court of Appeals, Fifth Circuit.  February 22, 1910.)

No. 1,971.

MASTER AND SERVANT (§ 243*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—
RAILROAD YARDS—CONTRIBUTORY NEGLIGENCE.

   Plaintiff's intestate, who was a car inspector employed by defendant
railroad company in its yards, went between two cars of a train being
made up in the yards to couple the air hose, when the engine backed other
cars against those so standing, and he was run over and killed.  He was
an experienced inspector, and knew that the rules of the company pro-
hibited him from going between the cars until the train was fully made
up, and such train was not due to leave for an hour and a half.  He could
also have seen the approaching engine if he had looked.· *Held*, that he
was chargeable with contributory negligence as a matter of law, and there
could be no recovery from defendant for his death.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 766–
771; Dec. Dig. § 243.*]

   Shelby, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern
District of Alabama.

Action by M. E. Woodward, administrator, against the Louisville &
Nashville Railroad Company.  Judgment for plaintiff, and defendant
brings error.  Reversed.

John C. Eyster, for plaintiff in error.
W. W. Callahan, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and FOSTER,
District Judge.

FOSTER, District Judge.  This was an action by M. E. Woodward,
administrator, against the Louisville & Nashville Railroad Company
for damages for the death of one Ed. Ezell, alleged to have been caused
by the negligence of said company.

Plaintiff's pleadings originally contained four counts, and by amend-
ment allowed a fifth count was added, but before the case went to the
jury he abandoned the second, third, and fourth counts of the com-
plaint.  The material part of count No. 1 is as follows:

   "On the said date [July 4, 1906] plaintiff's intestate was in the employ of
defendant in the capacity of car inspector at or near said Boyles, and as such
it became and was his duty to enter between the two rear cars of train No.
101, which train belonged to the defendant and was at that time composed of
17 cars, to couple the air hose between said cars, and while plaintiff's intes-
tate was so as aforesaid in between said cars engaged in his duties, one Smith,
an engineer in the service of the defendant, and who was in charge and control
of one of defendant's engines, negligently backed said engine and 7 cars coupled
thereto onto and against train No. 101, while plaintiff's intestate was between
the cars as aforesaid, causing said cars to roll backward and push against and
over plaintiff's intestate, causing severe injuries to him, from which he then
and there died."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied March 22, 1910.

Count No. 5 is practically the same as count No. 1, with the following addition:

"And plaintiff avers that the said train was being made up under the superintendence of one Allen, who was defendant's yardmaster at said Boyles, and while in the exercise of such superintendence the said Allen negligently ordered or directed the said train to be made up in such a place as that it was necessary to switch the cars around a curve, and as that the engineer in charge of the engine engaged in making up said train could not see the length of his train, and that the said train was not in view of the employés engaged in making up said train, and by reason of the negligence of the said Allen while engaged in such superintendence plaintiff's intestate received as a proximate consequence the injuries which caused his death as aforesaid."

Defendant interposed nine pleas, and, on settlement of the pleadings, demurrers were sustained to the second, seventh, and eighth pleas. Defendant's pleas, as allowed, set up, first, the general issue; and, second, the contributory negligence of the deceased, on the following grounds:

That he knew that the train was being made up on the track at said place, and that it was his duty to wait until it was made up before commencing to inspect it; that it was his duty, and he knew it to be such, to prevent harm by placing a blue flag at the end of each of said cars, and he failed to do so; that he had no duty to perform at the place where he was at the time he received his injuries; that he went in between two cars that were standing still, without looking to see whether an engine and cars were approaching upon said track; that there was nothing to obstruct his view; that, had he looked, he would have seen the cars approaching; that the cars were standing on said track, and he knew the train was being made up by the engine and cars approaching, in a curve; and that the position where he was inspecting said cars was on the outside of the curve, where he could not see the engine, and he negligently, knowing that he could not see the engine, went between the cars.

Defendant's plea No. 2 is substantially covered by the pleas allowed. Plea No. 7 sets up the negligence of plaintiff's intestate in failing to comply with defendant's rule No. 315, of which he had knowledge, and plea No. 8 sets up his knowledge of, and negligence in failing to comply with, defendant's rules No. 316 and No. 38. The rules referred to are as follows:

Rule 315: "They must carefully examine the couplings in trains after they are made up, and see that the links and pins are of proper size, and report to the yardmaster any imperfections."

Rule 316: "When inspecting or repairing cars that they do not wish moved, they must protect themselves by placing conspicuously a blue signal on both ends of the car, as provided in rule 38. When necessary to make repairs on a car in a train, they must place blue signals on both ends of the train before commencing work. If an engine is attached to it, they will place a blue signal upon the engine."

Rule 38: "A blue flag by day and a blue light by night, placed on the end of a car, denote that car inspectors are at work under or about the car or train. The car or train thus protected must not be coupled to or moved, until the blue signal is removed by the car inspectors. When a car or train standing on a siding is protected by a blue signal, other cars must not be placed in front of it so that the blue signal will be obscured, without first notifying the car inspector, that he may protect himself."

Defendant offered these rules in evidence at the trial and the court admitted rule 315, but excluded rules 316 and 38.

Defendant assigns as error, among other grounds, the sustaining of demurrers to its pleas Nos. 7 and 8, the exclusion of rules 316 and 38, and the refusal of the court to give the following instruction:

"If the jury believe the evidence, they will find for the defendant."

The plaintiff introduced but one witness, C. H. Wilson, also a car inspector on duty at the same time, as to the actual happening of the accident. We excerpt from his testimony as follows:

"Train No. 101 was made up at Boyles, the schedule time to leave was 6:50, and the injury occurred a few minutes after 5 o'clock. The fact that a curve existed there did not obstruct the view of an approaching engine to deceased. The point where this train was made up was the point where it was usually made. Ezell had worked there since December, and I think before that. Rules 315, 316, and 38 were in force at that time. At the time the train struck the deceased it had not been completed. It was necessary to put the four cars on that were attached to the engine. The car inspectors had no duty to perform with respect to this train until it was made up complete, unless of their own will. If they did anything at all, it was a voluntary act. The orders we got from the master car builder when we went to the yard was to wait until the train was completely made up before going in to make the couplings or doing anything at all. Ezell had no duty to perform with respect to this car until No. 101 was made up complete. There was nothing to do on No. 101, just risking his judgment, like I was risking my judgment."

Joseph Jacob was the only witness who testified for defendant. His uncontradicted evidence is, in part, as follows:

"I was foreman of the car department of the Louisville & Nashville Railroad at Birmingham, including the yard at Boyles, in July, 1906, and knew Ed. Ezell. At that time he was a car inspector. I was general foreman and supervisor over the car inspectors. I instructed him very careful, and never to go between the cars while switching, and told him the danger of it. Rules 315, 316, and 38 were in force. I examined him with reference to his knowledge of the rules before I put him on as extra inspector. I put him on as extra inspector, and he afterwards became general inspector."

The entire evidence is before us, and the undisputed facts seem to be as follows: On the day of his death, July 4, 1906, deceased was employed by defendant as car inspector at Boyles, a suburb of Birmingham, Ala. While he was between two cars of a number standing on the track, the engine backed up several more cars for the purpose of coupling them to those standing, to complete the train. Because of the shock of the coupling he was thrown down, and the train rolled over him and killed him. He was an experienced car inspector, and was familiar with the rules of the company. At the time he met his death, he was not called on or required to go in between the cars in his line of duty. The train had not been fully made up, and he was only in a position of danger because of his violation of the defendant company's rules, adopted for the protection of the very class of employés to which he belonged. There was no occasion for haste. The train was not to leave for at least an hour and a half after he went between the cars. The train was being made up at the usual place and in the usual manner of making up trains at Boyles. He knew, or he ought to have known, that the train was not completed when he went

in between the cars, and if he had looked he could have seen the approaching engine.

We think the demurrers to pleas 7 and 8 should have been overruled, and that rules Nos. 316 and 38 should have been admitted in evidence. Further, we believe that, even on the state of the case as made up, defendant below was entitled to the peremptory instruction in his favor.

The judgment of the Circuit Court is reversed, and the case is remanded, with instructions to grant a new trial.

SHELBY, Circuit Judge (dissenting). The court, by the opinion just read, has reached the conclusion, on the case shown by the record, that "the defendant below was entitled to the peremptory instruction in its favor." This conclusion could only be reached on the ground that the plaintiff's intestate was guilty, as matter of law, of contributory negligence. It appears that the alleged contributory negligence charged against the deceased in the opinion consists (1) in a disregard of the rules of the railroad company, and (2) in going between the cars when, "if he had looked, he could have seen the approaching engine" which pushed the cars over him and killed him.

1. The deceased went between the cars to make a coupling of the air hose. He was performing the duty, according to the evidence, in the usual way. C. H. Wilson testified:

"The inspectors at the time of making up the train were supposed to couple the air hose as quickly as could be done. They were coupling up while the train was being made up, if the cars were standing still, and no engine attached to it. That was the custom at Boyles."

If the rule is to be construed to forbid the inspector from going between the cars for that purpose, the evidence shows that it was not practically enforced—that it was the custom to perform the duty just as the deceased was performing it. A railroad company cannot defend by showing a printed rule which has been violated, if it appears from the proof that the rule was customarily disregarded, and that this was known to the agents of the road in charge.

Wilson further testified:

"I could not say whether Mr. Burke, who was assistant general yardmaster, paid any attention to me and my assistant coupling the air hose on my train or not. He was all over the yard while the work was going on. He did not object, or caution me not to do so. Coupling while the train was being made up on the main line was generally done in the presence of the yardman there."

It has been well said:

"A railroad company does not discharge its whole duty to the public by merely framing and publishing proper rules for the conduct of its business and the guidance and control of its servants; but it is also required to exercise such a supervision over its servants and the prosecution of its business as to have reason to believe that it is being conducted in pursuance of such rules." Whittaker v. D. & H. C. Co., 126 N. Y. 544, 549, 27 N. E. 1042; L. & N. R. R. Co. v. Richardson, 100 Ala. 232, 236, 14 South. 209, 211.

The charge of the trial judge, which is made a part of the bill of exceptions, shows that he properly submitted the question to the jury as to whether or not the rule was in force, or was customarily disre-

garded within the knowledge of the officers of the company. This was right, "it being a question for the jury whether the rule had been waived by the company, or whether there was any attempt to enforce it in good faith." C., C., C. & St. L. Ry. Co. v. Baker, 91 Fed. 224, 33 C. C. A. 468; Lake Erie & W. R. Co. v. Craig, 80 Fed. 488, 25 C. C. A. 585; 1 Labatt on Master & Servant, § 232, and cases there cited.

The master will not be permitted to suffer a general nonobservance of a rule designed to promote the safety of his servants, and then revive it for the purpose of tripping up and defeating the action of a particular servant, who, but for the rule, has an action against him for damages. 5 Thompson on Negligence, § 5404.

2. The court, in the opinion just read, makes a summary of what it decides are the "undisputed facts." This statement concludes:

"When he [the deceased] went between the cars, * * * if he had looked, he could have seen the approaching engine."

The only evidence that tends to sustain this conclusion is a single ambiguous statement of C. H. Wilson:

"The fact that a curve existed there did not obstruct the view of an approaching engine to the deceased."

That the witness did not mean that Ezell, the deceased, could have seen the engine from where he stood, is shown by the witness' further examination:

"I was on the west side where I could see the engine, and he [the deceased] was on the south side where he could not see the engine."

At another point in his examination he, in effect, repeated that Ezell could not have seen the approaching engine:

"He could not have seen the engine and the four cars where he entered between the cars."

The evidence does not, in my opinion, justify the conclusion that the deceased could have seen the approaching engine from where he entered between the cars. The statement of Wilson is directly to the contrary: The deceased "was on the south side, where he could not see the engine."

It follows, in my opinion, that, so far as this contention is concerned, the trial court ruled correctly in submitting the question of contributory negligence to the jury.